

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

John J. Tatar,

    Plaintiff,

-v-

Wachovia Bank, Trott &Trott, P.C.,
and Wells Fargo Bank, N.A.,
    Defendants.

Case:2:11-cv-13090
Judge: Cox, Sean F.
MJ: Michelson, Laurie J.
Filed: 07-18-2011 At 12:23 PM
CMP JOHN J. TATAR V WACHOVIA BANK,
ET AL (LG)

| | |
|---|---|
| John J. Tatar<br>In Propria Persona<br>16451 Savoie Street<br>Livonia, MI 48154<br>734-968-4715 | Attorney for Defendant Wachovia Bank<br>Lori McAllister (P39501)<br>400 Renaissance Center<br>Detroit, MI 48243<br>313-578-6979<br>lmcallister@dykema.com |

Attorney for Defendant Trott & Trott P.C. and Wells Fargo Bank, N.A.
Donald J. King (P55358)
31440 Northwestern Hwy. Ste. 200
Farmington Hills, MI 48334
248-723-6402

## COMPLAINT

NOW COMES Plaintiff, John J. Tatar, In Propria Persona, and for his 1st

Amended Complaint against the Defendants, states as follows:

### SUBJECT MATTER JURISDICTION

1.  Plaintiff, John J. Tater, is a protected citizen as the term defined in the

    14th Amendment of the Constitution of the United States and at all times

relevant to this action has resided in the city of Livonia, County of Wayne and State of Michigan.

2. Defendant, Wachovia Bank, N.A. is a company authorized to conduct business under the laws of the State of Michigan to the information and belief of the Plaintiff.

3. Defendant, Trott & Trott P.C. is a corporation doing business under the laws of the State of Michigan to the information and belief of the Plaintiff.

4. Defendant, Wells Fargo Bank is a business conducted under the laws of Texas to the information and knowledge of the Plaintiff.

5. The property which is the subject of this instant matter is located in the City of Livonia, Michigan, commonly known and described as follows:

That part of Lots 330 and 331, lying North of the Center line of Bell Creek, except the East 42 feet thereof, Supervisors Livonia Plat #5, being a subdivision of part of the South ½ of the Northwest ¼ of Section 13, Twn 1 South, Range 9 East, Livonia Township, Wayne County, Michigan, as recorded in Liber 66, Page 32 of Plats, Wayne County Records

Commonly known as: 16451 Savoie, Livonia, Michigan 48154

6. The Court has jurisdiction to hear this action pursuant to 12 U.S. C. sub section 1635 (f) (TILA), 1 USC 1961-1968 RESPA section 9, truth in lending, 1961 ET.SEQ, U.S.C.A. 1962, 15 U.S.C. sec. 1635 (a) (b) 12 CFR sec. 226. 26 (b) and MCLA 438.31 ( c ) MCL 600.3204(l)(d).

## REAL PARTY INTEREST

7. On December 15, 2006, Plaintiff entered into a Mortgage contract with

World Savings. (SEE EXHIBIT A)

8. On information and belief, Plaintiff alleges that Defendant, Wachovia Bank is not a principal subsidiary World Savings.

9. Wachovia Bank is a nationally chartered bank, regulated by the Office of the Comptroller of Currency, Department of Treasury.

10. Wachovia Bank is a company incorporated in the jurisdictional state of Texas and doing business in the state of Texas. Agent for service of process is Joe Price, Chief Financial Officer, 1301 Mckenny Street, Houston, TX 77010.

11. On information and belief, Plaintiff alleges that Defendants Wachovia Bank and Wells Fargo Bank, N.A., is not World Savings wholly owned subsidiary, yet acts in the capacity to be the mortgage lender.

12. Defendants  Wachovia Bank and Wells Fargo Bank, N.A. claims to be the holder of the promissory note.

13. On numerous occasions pursuant to the Fair Debt Collection Act, Section 14 809(b) Validating Debts, Plaintiff has contacted Wachovia Bank and Wells Fargo Bank, N.A.,and requested to validate the debt through production of the promissory note.(SEE EXHIBITS B,C AND F)

14. Defendants Wachovia Bank and Wells Fargo Bank, N.A. has refused to produce the promissory note.

15..Plaintiff  has reason to  and believes and thereupon alleges that said original blue ink  promissory note was never executed, and if it was executed, has long since been lost or intentionally destroyed, or assigned to

a third party. In such, that reconveyance and names of all Defendants,

Wachovia Bank, Wells Fargo Bank, N.A. title company, appraisers, auditors,

mortgage companies lacks or lacked standing as real party of interest to said

property as they cannot verify such chain of title without producing the

original promissory note and trace all actions and conveyances from therein

as to the real party of interest forthwith.

Count II

Illegal Foreclosure and Wrongful Eviction

16. Plaintiff incorporates paragraphs 1-15 as though stated within.

17. Pursuant to MCL. 600.324(1)(d) which provides in pertinent part: (A) party may foreclose on a mortgage by advertisement if **all** of the following circumstances exists.......(d) The party foreclosing the mortgage is either the owner of the indebtness or of an interest in the indebtness secured by the mortgage or the servicing agent of the mortgage.

18. Defendant, Wells Fargo Bank, N.A.foreclosed on the mortgage to said property through a Sheriff's Deed on Mortgage Sale on August 18, 2010. **(SEE EXHIBIT D)**

19. Defendant, Wells Fargo Bank, N.A. failed to validate the debt by producing the promissory note, and is not and has never been the owner of the indebtness, or an interest in the indebtness secured by the mortgage, or the servicing agent of the mortgage.

20. Financing for said property was obtained from World Bank a financial institution and alleged holder of the promissory note.

21. The financing transactions involved loan documentation, ("the note") and a mortgage security instrument (the "mortgage instrument").

22. The original lender in both cases was World Bank, the alleged holder of said promissory note.

23. No landlord-tenant relationship has ever existed between the Plaintiff and Wachovia Bank or Wells Fargo Bank, N.A.

24. As a result of Wells Fargo's illegal forecloser on said property, purportedly as successor by Wells Fargo Bank Southwest, N.A., formerly known as Wachovia Bank, FSB f/k/a/World Savings Bank, on or about April 18, 2011, Plaintiff received a summons and complaint for possession without Defendant Wells Fargo Bank, N.A. producing a promissory note, thus validating said debt.

   (SEE EXHIBIT E)

25. That Defendant, Wells Fargo Bank, N.A. and Defendant Trott &Trott, P.C's failure to comply with  MCL.3204(1)(d) by not owning the indebtness, not owning an interest in the  indebtness secured by the mortgage, and did not own the mortgage rendures the foreclosure proceedings in this case void ab initio.

26. That not only will irreparable harm be done to Plaintiff if this complaint is not heard on its merits and relief granted, but a travesty and miscarriage of justice be incurred.

## DAMAGES

27. Plaintiff incorporates paragraphs 1-26 as though stated herein.

28. The Defendants, Wells Fargo Bank, N.A. and Trott & Trott's. actions, caused

   the Plaintiff's home to be foreclosed on and Plaintiff is facing a wrongful

   summary proceeding eviction.

29. As a direct and proximate cause of the actions of the Defendants Wachovia

   Bank, Wells Fargo Bank, N.A. and Trott & Trott, the Plaintiff has severe and

   lasting injuries, mental anguish, anxiety, pain and suffering, loss of

   enjoyment of life and aggravation of preexisting conditions, Plaintiff

   has incurred medical and other expenses, both present and future.

WHEREFORE, Plaintiff prays that this Honorable Court vacate the foreclosure
and eviction and expunge the Sheriff's Deed on a Mortgage Sale and award to
Plaintiffs punitive damages of $50,000.00 against Wachovia Bank, award
punitive damages of $50, 000.00 against Defendant Trott & Trott P.C., award
punitive damages of $50,000.00 against Defendant Wells Fargo Bank, N.A., and
grant with such relief all the Court deems just and equitable.

Respectfully submitted by,

John Tater
In Pro Per
16451 Savoie Street
Livonia, MI 48154
734-968-4715

Dated: July 14, 2011

## TATAR'S EXHIBITS

**EXHIBIT A**.................. MORTGAGE
**EXHIBIT B**                 FEB 26,2008 WRITTEN REQUEST FOR VALIDATION
                             OF DEBT TO WACHOVIA/RETURN RECEIPT
**EXHIBIT C**                 APRIL 4, 2008 LETTER TO WORLD SAVINGS RE:
BREACH OF CONTRACT AND EXTENSION OF TIME/INVOICE/TRUTH
AFFIDAVIT/CERTIFIED MAIL RECEIPT
**EXHIBIT D**                 SHERIFF'S DEED ON MORTGAGE SALE
**EXHIBIT E**                 SUMMONS TO COURT DATED 4-18-11
**EXHIBIT F**                 AFFIDAVIT JUNE 11,2011 2pgs.PROOF OF CLAIM 3pgs
                             Preamble to Affidavit

# EXHIBIT A

1-05   09 41AM   FROM-World Savings                                    T-035   P 007/022   F-300

| WORLD SAVINGS | GOOD FAITH ESTIMATE OF SETTLEMENT COSTS |
|---|---|
| | (THIS IS NOT A COMMITMENT TO LEND) |

| BORROWER | JOHN TATAR | | DATE | 05/11/05 |
|---|---|---|---|---|
| LOAN AMOUNT APPLIED FOR | $239,400.00 | | LOAN NUMBER | 0026568712 |

The information provided below reflects estimates of the charges which you are likely to incur at the settlement of your loan. The fees listed are estimates – the actual charges may be more or less. Your transaction may not involve a fee for every item listed. The numbers listed beside the estimates generally correspond to the numbered lines contained in the HUD-1 or HUD-1A settlement statement that you will be receiving at settlement. The HUD-1 or HUD-1A settlement statement will show you the actual cost for items paid at settlement

| | | | | |
|---|---|---|---|---|
| * # | 801 | LOAN ORIGINATION FEE PAID BY BORROWER _____ | | .00 |
| * # | 801 2 | BUYDOWN FEE PAID BY BORROWER _____ | | .00 |
| # | 801 4 | TAKE-OUT COMMITMENT FEE _____ | | .00 |
| * # | 802 | LOAN DISCOUNT FEE PAID BY BORROWER _____ | | .00 |
| * # | 802.1 | SALEABLE LOAN DISCOUNT FEE _____ | | .00 |
| * | 803 | APPRAISAL/PROPERTY EVALUATION FEE (Property Inspection Waiver Fee may be substituted) _____ | | 325.00 |
| * | 803 2 | APPRAISAL REVIEW FEE _____ | | .00 |
| | 804 | CREDIT REPORT FEE PAID BY LENDER _____ | | 3.85 POC/L |
| # | 807 | ASSUMPTION FEE _____ | | .00 |
| * # | 808 | TAX SERVICE FEE _____ | | 30.50 |
| # | 809 | STANDARD PROCESSING FEE (Paid at time of Application) _____ | | .00 |
| * # | 809 | STANDARD PROCESSING FEE (Paid at loan Closing) _____ | | 160.00 |
| | 809 1 | MORTGAGE CREDIT CERTIFICATE (MCC) FEE _____ | | .00 |
| * # | 809.2 | EQUITY BUILDER SERVICING FEE _____ | | 150.00 |
| * | 810 | APPLICATION FEE (Paid at time of Application) _____ | | 172.00 |
| * # | 810 | APPLICATION FEE (Paid at loan Closing) _____ | | .00 |
| * # | 810 1 | CREDIT REVIEW FEE _____ | | 35.00 |
| # | 811 | TRUST REVIEW FEE _____ | | .00 |
| # | 812 | MORTGAGE BROKER FEE PAID BY BORROWER AT CLOSING _____ | | .00 |
| # | 812 1 | MISC BROKER FEES PAID BY BORROWER OUTSIDE CLOSING _____ | | .00 |
| | 812 2 | MORTGAGE BROKER FEE PAID BY LENDER _____ | | .00 |
| | 813 | INITIAL FLOOD ZONE DETERMINATION FEE _____ | | 3.00 |
| * # | 814 | ONGOING FLOOD ZONE MONITORING FEE _____ | | .00 |
| * # | 815 | FUNDING FEE _____ | | 50.00 |
| * # | 816 | RATE LOCK-IN FEE _____ | | .00 |
| * # | 817 | COMMITMENT FEE _____ | | .00 |
| * | 818 | DOCUMENT PREPARATION FEE _____ | | 150.00 |
| | 819 | LOAN SUBMISSION FEE PAID BY LENDER _____ | | .00 |
| | 820 | ELECTRONIC FACILITY FEE PAID BY LENDER _____ | | 00 |
| * # | 821 | LOAN SALES PROCESSING FEE | | 00 |
| * # | 901 | INTEREST: PREPAID INTEREST PAID AT CLOSING (Estimate based on maximum amount which may be collected.)   21 DAYS @ 5.040% | | 693.21 |
| * | 902 | MORTGAGE INSURANCE PREMIUM _____ | | .00 |
| | 903 | HAZARD INSURANCE PREMIUM _____ | | 715.20 |
| * | 1001 | HAZARD INSURANCE RESERVE DEPOSIT _____ | | .00 |
| * # | 1002 | MORTGAGE INSURANCE RESERVE DEPOSIT _____ | | .00 |
| * | 1003 | PROPERTY TAX RESERVE DEPOSIT _____ | | 200.00 |
| # | 1101 | SETTLEMENT FEE _____ | | .00 |
| | 1103 | TITLE EXAMINATION FEE _____ | | 20.00 |
| | 1106 | NOTARY FEES _____ | | .00 |
| | 1107 | ATTORNEYS' FEES _____ | | .00 |
| | 1108 | TITLE INSURANCE PREMIUM _____ | | 2,364.00 |
| | 1111 | TAX CERTIFICATE FEE _____ | | .00 |
| # | 1112 | CLOSING PROTECTION LETTER (PA) _____ | | .00 |
| | 1201 | RECORDING FEE _____ | | 86.00 |
| | 1202 | CITY/COUNTY TAX/STAMPS/OTHER GOVERNMENT TRANSFER CHARGES _____ | | .00 |
| | 1203 | STATE TAX/STAMPS _____ | | .00 |
| | 1204 | INTANGIBLE PROPERTY/RECORDING /MORTGAGE TAX _____ | | .00 |
| | 1301 | IMPROVEMENT LOCATION CERTIFICATE/SURVEY/PLOT PLAN FEE _____ | | .00 |
| | 1302 | PEST INSPECTION FEE _____ | | .00 |
| # | 1303 | COURIER FEE _____ | | 50.00 |
| # | 1304 | WIRE FEE _____ | | 50.00 |
| # | 1305 | ESTIMATED MISCELLANEOUS CLOSING AGENT CHARGES _____ | | 200.00 |
| # | 1306 | LOAN TIE-IN FEE _____ | | .00 |

### TOTAL ESTIMATED BORROWER PAID SETTLEMENT COSTS          $5,472.91

\* TO BE DEDUCTED FROM THE LOAN FUNDS .

# INCLUDED IN CALCULATION OF ANNUAL PERCENTAGE RATE (APR)

"POC/L" NEXT TO AN ITEM DESIGNATES A COST PAID BY LENDER OUTSIDE OF CLOSING
(NOT INCLUDED IN TOTAL BORROWER PAID COSTS)

"PC/L" NEXT TO AN ITEM DESIGNATES A COST PAID BY LENDER AT CLOSING
(NOT INCLUDED IN TOTAL BORROWER PAID COSTS)



LENDER'S USE ONLY

GF017A1 (12 15 04/4-04) E17A                    Page 1                    A1



MAY-11-05   09 42AM   FROM-World Savings                                    T-035   P 008/022   F-300

| WORLD SAVINGS | GOOD FAITH ESTIMATE OF SETTLEMENT COSTS – CONTINUED (THIS IS NOT A COMMITMENT TO LEND) | LN. NO.  0029588712 |
|---|---|---|

These estimates are provided pursuant to the Real Estate Settlement Procedures Act of 1974, as amended (RESPA). Additional information can be found in the HUD Special Information Booklet, which is to be provided to you by your mortgage broker or lender, if your application is to purchase residential real property and the Lender will take the first lien on the property

This form does not cover all items you may be required to pay in cash at settlement, for example, flood insurance premiums or a reserve deposit for flood insurance premiums.

**FOR INFORMATION  ABOUT TAX CONSEQUENCES OF CLOSING YOUR LOAN, PLEASE CONSULT YOUR TAX ADVISOR.**

Pursuant to RESPA if a lender requires the use of a particular provider of a settlement service for which the borrower pays any cost, then lender must give the name, address and telephone number of such providers. Listed below are the service providers World Savings has regularly required borrowers to use during the last 12 months. The estimates of costs (if any) shown on the corresponding line number on page 1 are based upon charges normally billed by these service providers.

● 803 –  If applicable, appraisal services may be provided by either World Savings appraisers or independent contractors Fannie Mae may waive a property inspection for which the fee is substantially less. Fees for inspection waivers will be paid to Fannie Mae, World Savings has an ongoing relationship with Fannie Mae

Fannie Mae
3900 Wisconsin Avenue NW
Washington DC, 20016-2892
202-752-7000

● 804 –  Credit Report Fee Paid by Lender

CBC Companies, Inc                    Equifax Information Service
520 E. Main Street                    5505 Peachtree Dunwoody Rd 600
Carnegie, PA 15106                    Atlanta, GA 30374-0241
800-925-0298                          800-685-1111

Trans Union Corporation               Experian Consumer Service
760 Sproul Road                       701 Experian Pkwy – PO Box 949
Springfield, PA 19064-0390            Allen, TX 75013-0949
800-632-1765                          888-397-3742

● 808 –  Tax Service will be provided by:

First American Real Estate Tax Services
8435 North Stemmons Freeway
Dallas, TX 75247
800-229-8426

● 813 and 814 – If there are estimates for Initial Flood Zone Determination Fee and Ongoing Flood Zone Monitoring Fee, these services will be provided by:

First America Flood Data Services
11902 Burnet Road
Austin, TX 78758
512-834-9595

● 902 –  If there is an estimate for mortgage insurance premium, this service may be provided by one of the following companies

Radian Guaranty Inc                   PMI Mortgage Insurance Company
400 Market Street, 2nd Floor          3003 Oak Road
Philadelphia, PA 19106                Walnut Creek, CA 94597
877-723-4261                          800-366-1143

United Guaranty Insurance             Republic Mortgage Insurance Company
230 N. Elm Street                     190 Oak Plaza Blvd
Greensboro, NC 27420                  Winston-Salem, NC 27105
888-822-5584                          800-884-7842

**CONTINUED ON NEXT PAGE**

GF01701 (12.15 04/4–04) E17F                    Page 2                              MI

MAY-11-05   09 43AM   FROM-World Savings                    T-035   P 009/022   F-300

| **WORLD SAVINGS** | GOOD FAITH ESTIMATE OF SETTLEMENT COSTS – CONTINUED<br>(THIS IS NOT A COMMITMENT TO LEND) | LN NO.   0029588712 |
|---|---|---|

● 1206 –  If applicable, homebuyer counseling services may be provided by one of the following non-profit organizations.

ACORN Housing Corporation, Inc.                ACORN Housing Corporation, Inc
650 S Clark Street, Suite 301                  1018 West Roosevelt Avenue
Chicago, IL 60605                              Phoenix, AZ 85007
312-939-1611                                   602-253-1111

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Housing Partnership, Inc                       Neighborhood Housing Services of Southern Nevada, Inc.
4016 Broadway Avenue                           1849 Civic Center Drive
West Palm Beach, FL 33407                      North Las Vegas, NV 89030
561-841-3500                                   702-649-0998

**THIS SPACE INTENTIONALLY LEFT BLANK**

OMB Approval No 2502-0265

| A  Settlement Statement | B.  Type of Loan |
|---|---|
| **First American Title Insurance Company**<br>**Final Statement** | 1-5.  Loan Type: Conv. Unins. |
| | 6   File Number 1066-840160 |
| | 7   Loan Number 0029588712 |
| | 8.   Mortgage Insurance Case Number |

C   Note:   This form is furnished to give you a statement of actual settlement costs  Amounts paid to and by the settlement agent are shown, items marked "(POC)" were paid outside the closing, they are shown here for informational purposes and are not included in the totals

D   Name of Borrower: John Tatar
16541 Savoie, Livonia, MI 48154

16451

E.   Name of Seller:

F   Name of Lender: World Savings
4101 Wiseman Blvd.Bldg. 108
San Antonio, TX 78251

G.   Property Location: 16541 Savoie, Livonia, MI 48154

H.   Settlement Agent: First American Title Insurance Company
Address: 1650 Summit Lake Drive, Suite 201, Tallahassee, FL 32317

Place of Settlement Address: 1650 Summit Lake Drive, Suite 201, Tallahassee, FL 32317

I   Settlement Date: 06/14/2005

Print Date: 06/13/2005, 6.47 PM

Disbursement Date  06/20/2005

| J   Summary of Borrower's Transaction | | K   Summary of Seller's Transaction | |
|---|---|---|---|
| 100. Gross Amount Due From Borrower | | 400. Gross Amount Due To Seller | |
| 101  Contract Sales Price | | 401  Contract Sales Price | |
| 102  Personal Property | | 402  Personal Property | |
| 103  Settlement charges to borrower (line 1400) | 4,848 54 | 403  Total Deposits | |
| 104  Payoff Balance - World Savings Attn Payoff Department | 193,994 84 | 404 | |
| 105  Payoff Balance - World Savings Attn Payoff Department | 39,046 15 | 405 | |
| Adjustments for items paid by seller in advance | | Adjustments for items paid by seller in advance | |
| 106  City/town taxes | | 406  City/town taxes | |
| 107  County taxes | | 407  County taxes | |
| 108  Assessments | | 408  Assessments | |
| 109 | | 409 | |
| 110 | | 410 | |
| 111 | | 411 | |
| 112 | | 412 | |
| 113 | | 413 | |
| 114 | | 414 | |
| 115 | | 415 | |
| 120  Gross Amount Due From Borrower | 237,889.53 | 420. Gross Amount Due To Seller | |
| 200. Amounts Paid By Or In Behalf of Borrower | | 500  Reductions In Amount Due To Seller | |
| 201  Deposit or earnest money | | 501  Excess deposit (see instructions) | |
| 202  Principal amount of new loan(s) | 244,850.00 | 502  Settlement charges (line 1400) | |
| 203  Existing loan(s) taken subject | | 503  Existing loan(s) taken subject | |
| 204 | | 504  Payoff of first mortgage loan | |
| 205 | | 505  Payoff of second mortgage loan | |
| 206 | | 506 | |
| 207 | | 507 | |
| 208 | | 508 | |
| 209 | | 509 | |
| Adjustments for items unpaid by seller | | Adjustments for items unpaid by seller | |
| 210  City/town taxes | | 510  City/town taxes | |
| 211  County taxes | | 511  County taxes | |
| 212  Assessments | | 512  Assessments | |
| 213 | | 513 | |
| 214 | | 514 | |
| 215 | | 515 | |
| 216 | | 516 | |
| 217 | | 517 | |
| 218 | | 518 | |
| 219 | | 519 | |
| 220. Total Paid By/For Borrower | 244,850.00 | 520  Total Reduction Amount Due Seller | |
| 300. Cash At Settlement From/To Borrower | | 600  Cash At Settlement To/From Seller | |
| 301. Gross amount due from Borrower (line 120) | 237,889.53 | 601. Gross amount due to Seller (line 420) | |
| 302  Less amounts paid by/for Borrower (line 220) | 244,850.00 | 602  Less reductions in amounts due to Seller (line 520) | |
| 303  Cash ( From) (X To) Borrower | 6,960.47 | 603 | |

The HUD-1 Settlement Statement which I have prepared is a true and accurate account of this transaction  I have caused or will cause the funds to be disbursed in accordance with this statement

Settlement Agent _____     Date  6/13/05

* See Supplemental Page for details

File No  1066-840160

| L. Settlement Charges | | |
|---|---|---|
| 700  Total Sales/Broker's Commission based on price | **Paid From Borrower's Funds at Settlement** | **Paid From Seller's Funds at Settlement** |
| Division of Commission (line 700) as follows | | |
| 701 | | |
| 702 | | |
| 703  Commission paid at Settlement | | |
| 704 | | |
| **800  Items Payable in Connection with Loan** | | |
| 801  Loan Origination Fee | | |
| 802  Loan Discount | | |
| 803  Appraisal Fee - World Savings | 200 00 | |
| 804  Credit Report - CBC Companies, Inc            POC-L $3 85 | | |
| 805  Lender's Inspection Fee | | |
| 806  Mortgage Insurance Application Premium | | |
| 807  Assumption Fee | | |
| 808  Document Preparation Fee - World Savings | 150 00 | |
| 809  Tax Service Contract - First American Real Estate Tax Services | 50 50 | |
| 810  Flood Zone Ongoing Monitoring Fee - First American Flood Data Services | 9 00 | |
| 811  Flood Zone Initial determination Fee - First American Flood Data Services    POC-B $3 00 | | |
| 812  Credit Analysis Fee - World Savings | 35 00 | |
| 813  Equity Builder Servicing Fee - World Savings | 150 00 | |
| 814  Funding Fee - World Savings | 50 00 | |
| Supplemental Summary                                POC-B $172 00 | 160 00 | |
| **900.  Items Required by Lender to be Paid in Advance** | | |
| 901  Interest 06/20/05 to 07/04/05 @$33 900000/day - World Savings | 474 60 | |
| 902 | | |
| 903  Hazard Insurance Premium for | | |
| 904 | | |
| 905 | | |
| Supplemental Summary | | |
| **1000  Reserves Deposited with Lender** | | |
| 1001  Hazard Insurance 22 mo(s) @$44 88/mo | 987.36 | |
| 1002  Mortgage Insurance | | |
| 1003  City Property Taxes | | |
| 1004  County Property Taxes 14 mo(s) @$133 66/mo | 1,871 24 | |
| 1005  Annual assessments | | |
| 1006 | | |
| 1007 | | |
| 1008  Aggregate Accounting Adjustment | -359 16 | |
| **1100  Title Charges** | | |
| 1101  Settlement or closing fee - First American Title Insurance Company | 550 00 | |
| 1102  Abstract or title search | | |
| 1103  Title examination | | |
| 1104  Title insurance Binder | | |
| 1105  Document Fee | | |
| 1106  Notary Fee | | |
| 1107  Attorney Fee | | |
| (includes above item numbers ) | | |
| 1108  Title Insurance - See supplemental page for breakdown of individual fees and payees | 480 00 | |
| (includes above item numbers ) | | |
| 1109  Lender's coverage $306,062 50 Premium  $480 00 | | |
| 1110  Owner's coverage $0 00 | | |
| 1111 | | |
| 1112 | | |
| 1113 | | |
| 1114 | | |
| 1115 | | |
| 1116 | | |
| 1117 | | |
| **1200  Government Recording and Transfer Charges** | | |
| 1201  *Recording fees  Deed $0 00 Mortgage $60 00 Release $0 00 | 60 00 | |
| 1202  City/county tax/stamps | | |
| 1203  State tax/stamps | | |
| 1204 | | |
| 1205 | | |
| 1206 | | |
| **1300.  Additional Settlement Charges** | | |
| 1301  Survey to | | |
| 1302  Pest Inspection to | | |
| 1303 | | |
| 1304 | | |
| 1305 | | |
| 1306 | | |
| 1307 | | |
| 1308 | | |
| 1309 | | |
| 1310 | | |
| 1311 | | |
| 1312 | | |
| 1313 | | |
| 1314 | | |
| Supplemental Summary | | |
| **1400.  Total Settlement Charges (enter on lines 103, Section J and 502, Section K)** | 4,848.54 | |

* See Supplemental Page for details

| | | |
|---|---|---|
| Supplemental Page<br>HUD-1 Settlement Statement | File No.<br>1066-840160 | |
| **First American Title Insurance Company**<br>**Final Statement** | Loan No.<br>0029588712 | |
| | Settlement Date:<br>06/14/2005 | |

Borrower Name & Address: John Tatar
16541 Savoie, Livonia, MI 48154

16457

Seller Name & Address:

| Section L. Settlement Charges continued | | | Paid From<br>Borrower's<br>Funds at<br>Settlement | Paid From<br>Seller's<br>Funds at<br>Settlement |
|---|---|---|---|---|
| 800    Supplemental Summary | **160.00** | | | |
| 815) Processing Fee - World Savings | | | 160 00 | |
| 816) Application Fee - World Savings | | POC-B $172 00 | | |
| 1108    Supplemental Summary | **480.00** | | | |
| a) Lender's Title Policy - First American Lenders Advantage | | | 480 00 | |
| 1201.    Supplemental Summary | **60.00** | | | |
| a) Record Mortgage - First American Lenders Advantage | | | 60 00 | |

I have carefully reviewed the HUD-1 Settlement Statement and to the best of my knowledge and belief, it is a true and accurate statement of all receipts and distributions made on my account or by me in this transaction. I further certify that I have received a copy of the HUD-1 Settlement Statement.

BUYER(S):

John Tatar

WORLD SAVINGS BANK, FSB

# ADJUSTABLE RATE MORTGAGE NOTE

### BIWEEKLY PAYMENT

### GDW AVERAGE DEPOSIT ACCOUNT RATE (COST OF SAVINGS) INDEX

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY BIWEEKLY PAYMENT AND MY UNPAID PRINCIPAL BALANCE. MY BIWEEKLY PAYMENT INCREASES, MY INTEREST RATE INCREASES AND MY PRINCIPAL BALANCE INCREASES ARE LIMITED. THIS NOTE IS SECURED BY A SECURITY INSTRUMENT OF THE SAME DATE.**

LOAN NUMBER  **0029588712**                    DATE  **JUNE 13, 2005**

BORROWER(S)    **JOHN TATAR, A MARRIED MAN**

sometimes called "Borrower" and sometimes simply called "I" or "me"

PROPERTY ADDRESS.   ~~16541 SAVOIE~~  *16451*
                    **LIVONIA, MI   48154**

**1. BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. **$244,850.00 * * * * *** , called "Principal," plus interest, to the order of the Lender. The Lender is **WORLD SAVINGS BANK, FSB, A FEDERAL SAVINGS BANK * * * * * * * * * * * * * * * * * * * ITS SUCCESSORS AND/OR ASSIGNEES**, or anyone to whom this Note is transferred

**2. INTEREST**
    **(A)   Interest Rate**
    Interest will be charged on unpaid Principal until the full amount of Principal has been paid. Initially, I will pay interest at a yearly rate of **5.040%**    The interest rate I will pay may change as described in this Section 2. Interest will be charged on the basis of a 364-day year, divided into 26 segments of two weeks each

    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note

    **(B)   Interest Change Dates**
    The interest rate I will pay may change on the **1ST** day of **AUGUST, 2005 * *** and on every other Monday thereafter. Each date on which my interest rate could change is called an "Interest Change Date" The new rate of interest will become effective on each Interest Change Date

    **(C)   Interest Rate Limit**
    My lifetime maximum interest rate limit is **11.950% * *** called "Lifetime Rate Cap"

SD236A (11 01 03/2-03) C36A                    BIWEEKLY ARM
                                               Page 1

LENDER'S USE ONLY

0029588712

**(D)   Index**

Beginning with the first Interest Change Date, my interest rate will be based on an "Index." The Index is the weighted average of the interest rates in effect as of the last day of each calendar month on the deposit accounts of the federally insured depository institution subsidiaries ("Subsidiaries") of Golden West Financial Corporation ("GDW"), as made available by GDW. Included in the deposit accounts for purposes of the Index calculation are all of the items and adjustments that GDW uses to calculate the line item currently called "cost of deposits" that appears in its quarterly and annual reports to shareholders as well as in other financial reports publicly distributed by GDW. The Index does not include deposit accounts owned by GDW or its Subsidiaries or other affiliates. The calculation of the Index includes adjustments for the effects of financial instruments related to the deposit accounts and other adjustments determined by GDW in its sole discretion as appropriate to accurately reflect the weighted average of interest rates on the deposit accounts. If an Index is substituted as described in Section 2(F) of this Note, the alternative Index will become the Index. The most recent Index figure available on each Interest Change Date is called the "Current Index."

**(E)   Calculation of Interest Rate Changes**

Lender will calculate my new interest rate by adding **2.650** *   percentage points, called the "Margin," to the Current Index. Subject to the limit stated in Section 2(C) above, the result of this calculation will be my new "Interest Rate" until the next Interest Change Date.

If Lender fails to utilize the entire interest rate increase to which it is entitled under this Note on any Interest Change Date by failing to add all or part of the allowable Margin to the Current Index, then Lender may add any such allowable Margin to the Current Index on any future Interest Change Date. Lender may not, at a later date, carryover or add interest to which it is not entitled under this Note on any Interest Change Date.

**(F)   Alternative Index**

The Lender may choose an alternative index to be the Index if the Index is no longer available. For purposes of this Section 2(F), the Index is not "available" if (a) the Index is for any reason no longer published, or (b) the Lender, in its sole discretion, determines that the Index is calculated in a substantially different manner or based on substantially different information than at the time the Index became applicable to this Note; or (c) applicable laws or regulations prevent the Lender from using the Index to calculate interest under this Note. The selection of the alternative index shall be at Lender's sole discretion. The alternative index may be a national or regional index or another type of index approved by the Lender's primary regulator. The Lender will give me notice of the alternative index.

## 3.   PAYMENTS

**(A)   Time and Place of Payments**

I will pay Principal and interest by making payments every two weeks.

I will make my first biweekly payment on **JULY 18, 2005** *  *   and every other Monday thereafter. I will make these biweekly payments until I have paid all the Principal and interest, and (ii) any other charges described below that I may owe under this Note, and (iii) any charges that may be due under the Security Instrument. If, on **JULY 04, 2035** *  *  *, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will maintain a deposit account with Lender, or with a bank or savings and loan which has been approved by Lender, and keep sufficient funds in such deposit account to allow Lender to automatically withdraw my biweekly payment on each of the biweekly payment dates stated above. The sole purpose of the deposit account is to ensure payment of the biweekly payments on the due-date of each payment and I instruct and charge Lender to withdraw the amount of each biweekly payment from the deposit account on each due date without any further instructions from me.

**(B)   Amount of My Initial Biweekly Payments**

Initially, each of my biweekly payments will be in the amount of US. **$660.21.** This amount will change.

**(C)   Payment Change Dates**

My biweekly payment will change as required by Section 3(D) below beginning on the **17TH** *  *   day of **JULY, 2006** *  *  *  *   and every 52 weeks thereafter. Each of these dates is called a "Payment Change Date." My biweekly payment will also change at any time Section 3(F) or 3(G) below requires me to pay a different amount.

I will pay the amount of my new biweekly payment every other Monday beginning on each Payment Change Date and as provided in Section 3(F) or 3(G) below.

**(D)   Calculation of Payment Changes**

On the Payment Change Date my biweekly payment may be changed to an amount sufficient to pay the unpaid principal balance, including any deferred interest as described in Section 3(E) below, by the "Modified Maturity Date." The Modified Maturity Date is the date on which this note will be paid after accounting for

0029588712

acceleration of the payment schedule resulting from biweekly payments rather than the monthly payment schedule used to calculate the Maturity Date described in Section 3(A) above However, the amount by which my payment can be changed will not be more or less than 7-1/2% of the then existing Principal and Interest payment This 7-1/2% limitation is called the "Payment Cap" Furthermore, my payment cannot be decreased on any Payment Change Date if there is any unpaid deferred interest The Lender will perform this Payment Change calculation at least 50 but not more than 90 days before the Payment Change Date.

**(E)   Deferred Interest, Additions to My Unpaid Principal**
From time to time, my biweekly payments may be insufficient to pay the total amount of biweekly interest that is due If this occurs, the amount of interest that is not paid each payment, called "Deferred Interest," will be added to my Principal and will accrue interest at the same rate as the Principal.

**(F)   Limit on My Unpaid Principal, Increased Biweekly Payment**
My unpaid principal balance can never exceed   **125%** *   of the Principal I originally borrowed, called "Principal Balance Cap" If, as a result of the addition of deferred interest to my unpaid principal balance, the Principal Balance Cap limitation would be exceeded on the date that my biweekly payment is due, I will instead pay a new biweekly payment Notwithstanding Sections 3(C) and 3(D) above, I will pay a new biweekly payment which is equal to an amount that will be sufficient to repay my then unpaid principal balance in full on the Maturity Date at the interest rate then in effect, in substantially equal payments

**(G)   Payment Cap Limitation, Exceptions**
Beginning with the 5th Payment Change Date and every 5th Payment Change Date thereafter, my biweekly payment will be calculated as described in Section 3(D) above except that the Payment Cap limitation will not apply Additionally, the Payment Cap limitation will not apply on the final Payment Change Date

**(H)   Notice of Payment Changes**
The Lender will deliver or mail to me a notice of any changes in the amount of my biweekly payment, called "Payment Change Notice," before each Payment Change Date. The Payment Change Notice will include information required by law

**4. FAILURE TO MAKE ADJUSTMENTS**
If for any reason Lender fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Lender may, upon discovery of such failure, then make the adjustments as if they had been made on time I also agree not to hold Lender responsible for any damages to me which may result from Lender's failure to make the adjustment and to let the Lender, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal

**5. BORROWER'S RIGHT TO PREPAY**
I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE.  A PAYMENT OF PRINCIPAL BEFORE IT IS DUE IS CALLED A "PREPAYMENT".  WHEN I MAKE A PREPAYMENT, I WILL TELL THE LENDER IN WRITING THAT I AM DOING SO.  THE LENDER MAY REQUIRE THAT ANY PARTIAL PREPAYMENTS BE MADE ON THE DATE MY REGULARLY SCHEDULED PAYMENTS ARE DUE.  IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATES OR AMOUNT OF MY REGULARLY SCHEDULED PAYMENTS UNLESS THE LENDER AGREES TO THOSE CHANGES IN WRITING.  I MAY PAY DEFERRED INTEREST ON THIS NOTE AT ANY TIME WITHOUT CHARGE AND SUCH PAYMENT WILL NOT BE CONSIDERED A "PREPAYMENT" OF PRINCIPAL.  DURING THE FIRST 3 YEARS OF THE LOAN TERM IF I MAKE ONE OR MORE PREPAYMENTS THAT, IN THE AGGREGATE, EXCEED $5,000 IN ANY CALENDAR MONTH, I MUST PAY A PREPAYMENT CHARGE EQUAL TO 2% OF THE AMOUNT SUCH PREPAYMENTS EXCEED $5,000 IN THAT CALENDAR MONTH. AFTER THE FIRST 3 YEARS OF THE LOAN TERM, I MAY MAKE A FULL OR PARTIAL PREPAYMENT WITHOUT PAYING ANY PREPAYMENT CHARGE. * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

**6. MAXIMUM LOAN CHARGES**
If a law which applies to this loan and which sets maximum loan charges is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Lender may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me If a refund reduces Principal, the reduction will be treated as a partial Prepayment

SD236C (11 01 03/2-03) C36E                    BIWEEKLY ARM                    MI
                                               Page 3

0029588712

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Lender has not received the full amount of any biweekly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Lender. The amount of the charge will be **5%** of my overdue payment of Principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

I will be in default if (i) I do not pay the full amount of each biweekly payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under this Note or the Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading.

**(C) Default — Change to Monthly Payments**

If I fail to have sufficient funds in my deposit account to make my biweekly payment on the date my biweekly payment is due on two occasions in any 12 month period or four occasions any time prior to the Maturity Date or if a garnishment, attachment or seizure is made of or against my deposit account, then I will be in default and Lender will have a right, but not a duty, to change my loan for its remaining term to one with payments due monthly instead of biweekly. If the Lender chooses to change my loan to one with payments due monthly, Lender may charge its then current fee for such a change and will provide me with written notice of the change at least 30 days in advance of the date the first monthly payment is due. This notice will also specify the amount of the monthly payment and the date the first monthly payment is due. In such event, interest on the loan balance from the last date interest was paid to the first date of the month preceding the date the first monthly payment is due will be added to my loan balance. The amount of the first monthly payment will be determined without regard to the 7-1/2% change in amount of payment cap set forth in section 3(D) above.

In the event that my payment mode is changed from biweekly to monthly, interest will be charged thereafter on the basis of a 12 month year and a 30-day month. The Interest Rate I will pay will change on the first monthly payment date and on the same day every month thereafter. This revised interest change date will be substituted for the definition of "Interest Change Date" included in Section 2(B) above. The "Payment Change Date" as defined in Section 3(C) above will change to be the date the payment is changed from a biweekly to a monthly payment as described above in this paragraph 7(C) and on that day every 12 months thereafter.

I understand that if for any reason my payments are changed from biweekly to monthly, the monthly payments will remain in effect for the remaining term of my loan and may not be changed back to biweekly payments unless Lender, at its sole option, agrees in writing to such a change.

**(D) Notice of Default**

If I am in default, the Lender may send me a written notice, called "Notice of Default," telling me that if I do not pay the overdue amount by a certain date, the Lender may require me to pay immediately the amount of Principal which has not been paid and all the interest I owe on that amount, plus any other amounts due under the Security Instrument.

**(E) No Waiver by Lender**

Even if, at a time when I am in default, the Lender does not require me to pay immediately in full or change my loan type from biweekly to monthly at that time as described above, the Lender will still have the right to do so if I am in default at a later time.

**(F) Payment of Lender's Costs and Expenses**

The Lender will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses may include, for example, reasonable attorneys' fees and court costs.

**8. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me or any Borrower at **18541 SAVOIE,** LIVONIA, MI  48154, * * * * * * * * * * * * * * * * * * *16757* * * or at a single alternative address if I give the Lender notice of my alternative address. I may give notice to Lender of a change in my address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes.

Except as permitted above for changes of address, any notice that must be given to the Lender under this Note will be given by mailing it by first class mail to the Lender at 1901 Harrison Street, Oakland, California 94612, or at a different address if I am given a notice of that different address.

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who takes over these obligations is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

0029588712

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor "Presentment" means the right to require the Lender to demand payment of amounts due "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid

## 11. SECURED NOTE – ACCELERATION

In addition to the protections given to the Lender under this Note, the Security Instrument dated the same date as this Note gives the Lender security against which it may proceed if I do not keep the promises which I made in this Note That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note and includes the following Paragraph **26**:

### AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

**Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

**Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

(ii)    Lender approves the creditworthiness of the transferee in writing,

(iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

(iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender, such assumption agreement providing for transferee opening a deposit account with Lender, or with a bank or savings and loan which has been approved by Lender, for direct payment as provided in the secured notes

The loan may be assumed under its then existing terms and conditions with one exception, the Lifetime Rate Cap may be changed The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes

## 12. GOVERNING LAW; SEVERABILITY

This Note shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Note are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Note

0029588712

**13. CLERICAL ERRORS**

In the event the Lender at any time discovers that this Note or the Security Instrument or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from the Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold the Lender responsible for any damage to me which may results from any such error

**14. LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and the Lender delivers to me an indemnification in my favor, signed by the Lender, then I will sign and deliver to the Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS**

0029588712

## SIGNATURE PAGE

NOTICE TO BORROWER(S):

BY SIGNING THIS NOTE YOU AGREE TO PAY A PREPAYMENT CHARGE IN CERTAIN CIRCUMSTANCES.  PLEASE CAREFULLY READ THIS ENTIRE NOTE (INCLUDING THE PREPAYMENT PROVISION) BEFORE YOU SIGN IT.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
JOHN TATAR

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

614746 JUL 07 2005

712403 NOV 29 2005

Li-43896      Pg-650
206016397  11/29/2005
Bernard J. Youngblood
Wayne Co. Register of Deeds

302387l-Dcm

# MORTGAGE

**THIS IS A FIRST MORTGAGE WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED.**

**THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS MORTGAGE IS $306,062.50 * * WHICH IS  125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.**

**NOTE AMOUNT: $244,850.00          LOAN NUMBER:    0029588712**

**I.     DEFINITIONS OF WORDS USED IN THIS MORTGAGE**
   **(A)**   Security Instrument. This Mortgage, which is dated   JUNE 13, 2005, * * * * * will be called the "Security Instrument"

   **(B)**   Borrower. **JOHN TATAR, A MARRIED MAN**, JOINED BY HIS WIFE ZHANNA TATAR

**Received**

**FEB 22 2006**

sometimes will be called "Borrower" and sometimes simply "I" or "me", whose address is 18541 SAVOIE, LIVONIA, MI  48154.

**(C)** Lender.  WORLD SAVINGS BANK, FSB, * * * * * * * * * * * * * * * * * * * * * * * * ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender" Lender is  A FEDERAL SAVINGS BANK * * * * * * * * * * * * * * * which is organized and exists under the laws of the United States Lender's address is 1901 HARRISON STREET, OAKLAND, CALIFORNIA  94612.

   **(D)**   Note. The note signed by Borrower and having the same date as this Security Instrument, including, all extensions, renewals, substitutions and modifications thereof, will be called the "Note" The Note shows that I owe Lender the original principal amount of US $244,850.00 * * * ("Note Amount"), plus accrued and deferred interest and such other amounts as stated in the Note I have promised to pay this debt in biweekly payments and to pay the debt in full by JULY 04, 2035.

   **(E)**   Property. The property that is described below in Section III entitled "Description of the Property" will be called the "Property"

   **(F)**   Sums Secured. The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured"

   **(G)**   Person. Any person, organization, governmental authority or other party will be called "Person"

Requested by and
Return to:
Recording Department
First American Lenders Advantage
1801 Lakepointe Drive, Suite 111
Lewisville, TX 75057
(469) 322-2500

* 003 *

LENDER'S USE ONLY

SD178A1 (01 07 2005-2005) J78A         Page 1                    MI
DEFERRED INTEREST         MORTGAGE-ADJ BIWEEKLY
REV (07 30 02/1-02)

Lı-43896          Pa-651

0029588712

**II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**

I mortgage, irrevocably grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender,

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property, and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender

**III.    DESCRIPTION OF THE PROPERTY**

I give Lender rights in the Property described below

(i)    The property which is located at 1664T SAVONE, LIVONIA. MI 48154 . * * * * * * * * * * * * * * * * * * * * * * * The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property,

(iii)    All rights in other property that I have as owner of the Described Property These rights are known as easements, rights and appurtenances attached to the Property,

(iv)    All rents or royalties and other income from the Described Property,

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property,

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property,

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (ii) of this Section,

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future,

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section, and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below

**IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that (i) I lawfully own the Property, (ii) I have the right to mortgage, grant and convey the Property to Lender, and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have I promise that I will defend my ownership of the Property against any claims of such rights

**COVENANTS**

I promise and I agree with Lender as follows

**1.    BORROWER'S PROMISE TO PAY**

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes

SD178B (01 07 99/1-99) J78C

MORTGAGE-ADJ BIWEEKLY

Page 2

Lt-43896        Pg-652

0029588712

2.    **PAYMENTS FOR TAXES AND INSURANCE**

    **(A)  Borrower's Obligations**
        I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

    **(B)  Escrow Accounts**
        Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property, (b) yearly leasehold payments or ground rents on the Property, if any, (c) yearly hazard or property insurance premiums, (d) yearly flood insurance premiums, if any, and (e) yearly mortgage insurance premiums, if any These items are called "Escrow Items" Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U S C s 2601 et seq ("RESPA"), unless another law that applies to the Funds sets a lesser amount If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

        The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made The Funds are pledged as additional security for all sums secured by this Security Instrument

        If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA

        Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender If, under paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument

3.    **APPLICATION OF BORROWER'S PAYMENTS**
        Unless the law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes

        First, to pay prepayment charges due under the Secured Notes;

        Second, to pay any advances due to Lender under this Security Instrument,

        Third, to pay the amounts due to Lender under Paragraph 2 above,

        Fourth, to pay interest due under the Secured Notes,

        Fifth, to pay deferred interest due under the Secured Notes;

        Sixth, to pay principal due under the Secured Notes,

        Last, to pay late charges due under the Secured Notes

SD178C (01 07 99/1-99) J78D

MORTGAGE-ADJ BIWEEKLY                MI
Page 3

Li-43896        Pa-653

0029588712

## 4.   BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property  I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument However, this Security Instrument does not require me to satisfy a superior lien if (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation, or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up, or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice

## 5.   BORROWER'S OBLIGATION TO MAINTAIN INSURANCE

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property  The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage The insurance must be in the amounts and for the periods of time required by Lender I may choose the insurance company but my choice is subject to Lender's approval Lender may not refuse to approve my choice unless the refusal is reasonable All of these insurance policies and renewals of the policies must include what is known as a Standard Mortgagee Clause to protect Lender The form of all policies and renewals must be acceptable to Lender Lender will have the right to hold the policies and renewals If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so

The amount paid by the insurance company is called "Proceeds" Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured The 30-day period will begin when the notice is given

If any Proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my biweekly payments under the Secured Notes and under Paragraphs 1 and 2 above However, Lender and I may agree in writing to delays or changes.

SD178D (01 07 99/1-99) J78E

MORTGAGE-ADJ BIWEEKLY
Page 4

MI

X _____ X _____

Li-43896      Pa-654

0029588712

If Lender acquires the Property under Paragraph 27 below, all of my rights in the insurance policies will belong to Lender Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender However, Lender's rights in those Proceeds will not be greater than the Sums Secured immediately before the Property is acquired by Lender or sold

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law

## 6. BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations I will not destroy or substantially change the Property and I will not allow the Property to deteriorate I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

## 7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5 above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs Lender must give me notice before Lender may take any of these actions Although Lender may take action under this Paragraph 7, Lender does not have to do so Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes which have not been paid I will pay those amounts to Lender when Lender sends me a notice requesting that I do so Interest on each amount will begin to accrue on the date that the amount is advanced by Lender However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7 This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest

## 8. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property They must do so in a reasonable manner and at reasonable times Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection

## 9. AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property, and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property All of those proceeds will be paid to Lender

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by the following fraction (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking The remainder of the proceeds will be paid to me

SD178E (01 07 99/1-98) J78F
REV (02 11 00/1-08)

MORTGAGE-ADJ BIWEEKLY
Page 5

M1

L1-43896        Pa-655

0028588712

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured The 30-day period will begin when the notice is given

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Secured Notes, that use will not delay the due date or change the amount of any of my biweekly payments under the Secured Notes and under Paragraphs 1 and 2 above However, Lender and I may agree in writing to delays or changes

**10.   CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

(A)   Borrower's Obligations

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the biweekly payments of principal and interest due under the Secured Notes or under this Security Instrument Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so

(B)   Lender's Rights

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 27 below to demand that I make immediate payment in full of the amounts that I owe to Lender under the Secured Notes and under this Security Instrument

**11.   OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together This means that any one of us may be required to pay all of the Sums Secured

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accomodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument

**2.   MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Secured Notes or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes

**13.   LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument

**14.   NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method The notice will be addressed to me at 16541 SAVOIE, LIVONIA, MI  48154. * * * * * * * * * * * * * * * * * * * * * * * *

L1-43896    Pg-656

0029588712

A notice will be given to me at an alternative address if I give Lender notice of my alternative address I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement I may designate only one mailing address at a time for notification purposes Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I (C) above entitled, "Definitions of Words Used in this Mortgage," unless Lender gives me notice of a different address Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law

### 15. GOVERNING LAW; SEVERABILITY

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations including those for federally chartered savings institutions, called "Federal Law." In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes

### 16. BORROWER'S COPY

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument

### 17. LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may (A) collect the rental payments, including overdue rental payments, directly from the tenants, (B), enter upon and take possession of the Property, (C) manage the Property, and (D) sign, cancel and change rental agreements and leases If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 27, I understand and agree that (A) my right to occupy the Property ceases at the time the Property is sold, (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property, and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction All rental payments collected by Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds

### 18. INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS

An assignment is a transfer of rights to another I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument These rights to bring legal action may include an action for breach of contract, fraud, concealment of a material fact or for intentional or negligent acts I assign these rights, and any proceeds arising from these rights, as permitted by applicable law, to Lender Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to any amount that I may owe to Lender under the Note and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment

### 19. CLERICAL ERRORS

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to reexecute any Loan Documents that are necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error

SD178G (01 07.99/1-99) J76H                MORTGAGE-ADJ BIWEEKLY          MI

REV (11 15 02/2-02)                         Page 7

Lı-43896          Po-657

0029588712

**20.  LOST, STOLEN OR MUTILATED DOCUMENTS**
If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes

**21.  WAIVER OF STATUTE OF LIMITATIONS**
I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes

**22.  CAPTIONS**
The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument

**23.  MODIFICATION**
This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender

Lender may modify the Security Instrument and the Secured Notes at Lender's sole discretion in the event that I have failed to make my biweekly payments in the manner set forth in the Secured Notes In the event of a modification to monthly payments, Lender will substitute the term "monthly payment" at each point that the term "biweekly payment" appears in this Security Instrument

**24.  CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**
If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that

(A)  If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest

(B)  The following are called the "Constituent Documents" (i) The declaration or any other document which created the Project, (ii) By-laws of the Owners Association, (iii) Code of regulations for the Project, (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association, (v) The Project's covenants, conditions and restrictions, (vi) Other equivalent documents

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments If I do not pay the dues and assessments when due, Lender may, at its option, pay them I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above

(C)  If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property, and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage I shall provide a copy of such master or blanket policy to Lender annually

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me

SD178H (01 07 99/1-99) J78I

MORTGAGE-ADJ BIWEEKLY
Page 6

X

L1-63896      Pg-658
0029588712

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage

(D)    I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking, (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally, (iii) termination of professional management and assumption of self-management of the Owners Association, or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender

25.    FUTURE ADVANCES
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower Such future advances, with interest, will then be additional Sums Secured under this Security Instrument

26.    AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

Acceleration of Payment of Sums Secured. Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument

If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me

Exception to Acceleration of Payment of Sums Secured. If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if

(i)    Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender,

(ii)    Lender approves the creditworthiness of the transferee in writing,

(iii)    transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards,

(iv)    an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the balance of principal and interest due under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender, and

(v)    the transferee executes an assumption agreement which is satisfactory to Lender, such assumption agreement providing for transferee opening a deposit account with Lender, or with a bank or savings and loan which has been approved by Lender, for direct payment as provided in the secured notes

The loan may be assumed under its then existing terms and conditions with one exception, the Lifetime Rate Cap may be changed The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

SD1781 (01 07 98/1-99) J78J

MORTGAGE-ADJ  BIWEEKLY
Page 9

X _____  X _____

Lt-63896        Pg-659
0029588712

**27.    RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**
It will be called a "Breach of Duty" if (i) I do not pay the full amount of each biweekly payment on the date it is due, or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument, or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts, or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured

If there is a Breach of Duty by me, the Lender may take action to have the Property sold under any applicable Federal Law, rule or regulation and, where Federal Law is not applicable, the Lender may invoke the power of sale and any other remedies under the law of the state where the Property is located, which will be called the "Applicable Law."

Lender does not have to give me notice of a Breach of Duty unless notice is required by Applicable Law If Lender does not make a demand for full payment upon a Breach of Duty, Lender may make a demand for full payment upon any other Breach of Duty

If there is a Breach of Duty, Lender may also take action to have a receiver appointed under the Applicable Law to collect rents from any tenants on the Property and to manage the Property The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property

The sale of the Property may be postponed by or at the direction of Lender except as limited or prohibited by the Applicable Law. If the Property is sold under the Applicable Law, I agree that it may be sold in one parcel I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property, except to the extent that the Applicable Law limits or prohibits any such charges

Lender will apply the proceeds from the sale of the Property in the following order (A) to all fees, expenses and costs incurred in connection with the sale, including trustees' and attorneys' fees, if any, (B) to all Sums Secured by this Security Instrument, and (C) any excess to the Person or Persons legally entitled to it

**28.    LENDER'S OBLIGATION TO DISCHARGE THIS SECURITY INSTRUMENT**
When Lender has been paid all of the amounts secured by this Security Instrument, Lender shall release or cancel this Security Instrument

**29.    STATEMENT OF OBLIGATION**
To the extent allowed by law, I will give Lender a fee for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes

**30.    WAIVER OF REDEMPTION**
My right of redemption is waived to the extent allowed by applicable law

**31.    RIDERS TO THIS SECURITY INSTRUMENT**
If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument

SD178JI (51 07 99/1-99) J78K

MORTGAGE-ADJ BIWEEKLY
Page 10

Lt-43896    Pa-660
0029588712

**32.  (  )  QUICK QUALIFYING LOAN PROGRAM**
I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly This loan is called a "Quick Qualifying Loan" I have stated and I confirm that (A) I do not have any other Quick Qualifying Loans with Lender, (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument, and (C) If I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes

**33.  ( X )  OWNER OCCUPANCY**
Lender has relied upon statements of fact which I have made to qualify for this loan I have stated and confirm that (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded, and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes

**( X )  VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

SD178X (01 07 98/1-99) J78L
REV  (07 30 02/1-02)

MORTGAGE-ADJ BIWEEKLY
Page 11

L1-43896        Pa-661

0029588712

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records

**(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)**

BORROWER(S)

JOHN TATAR _____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

Mailing Address ~~18541 SAVOIE~~  16451 (?)
LIVONIA, MI  48154

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

RECORDING REQUESTED BY AND
WHEN RECORDED MAIL TO.
WORLD SAVINGS
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

THIS INSTRUMENT WAS PREPARED
BY   Jose Marquez
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

TAX IDENTIFICATION NUMBER   SITE ADDRESS

SD176L1 (91 07 99/1-99) J78M
REV  (07.30 02/1-02)

MORTGAGE-ADJ BIWEEKLY
PAGE 12 OF 12

MI

Lı-43896    Pu-662

LOAN NUMBER:  0029588712

**BORROWER(S)' SPOUSE(S):**  The undersigned hereby joins in this Security Instrument for the sole purpose of encumbering, subordinating, conveying and/or waiving any current or potential interest in the Property By signing below, the undersigned encumbers, subordinates, conveys and/or waives any and all rights, interests or claims in the Property, including, but not limited to, homestead, dower, marital or joint-occupancy rights No personal liability under the Note is hereby incurred by the undersigned joining spouse

BORROWER(S)' SPOUSE(S):

_Zhanna Tatar_ _____ (Seal)
ZHAMNA TATAR

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

ATTACH INDIVIDUAL  NOTARY ACKNOWLEDGEMENT

SD876A2  (04 15 04/1-84) L75B                MI

L1-43896          Pa-663

State of Michigan

County of Wayne

**The Foregoing Instrument was Acknowledged** Before me this 14th day of
JUNE , 20 05 , by John Tatar and Zhanna Tatar who is/are
personally known to me or who has/have produced valid driver's license(s) as identification.

_____
NOTARY PUBLIC

Sheila A. Norfleet
Notary Print Name
My Commission Expires: April 9, 2008
Acting in the County of Wayne

SHEILA A. NORFLEET
NOTARY PUBLIC WAYNE CO., MI
MY COMMISSION EXPIRES Apr 9, 2008

**Prepped**

FEB 23 2006

**Sharon Ruiz**



2



614746 JUL 07 2005                    Li-43896        Pa-665

# WORLD SAVINGS

### E X H I B I T  "A"
### LEGAL DESCRIPTION

LOAN NO. _____0029588712_____

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF WAYNE
STATE OF MICHIGAN * * * * * * , DESCRIBED AS FOLLOWS

## EXHIBIT "A"

THAT PART OF LOTS 330 AND 331, LYING NORTH OF THE CENTER LINE OF BELL CREEK, EXCEPT THE
EAST 42 FEET THEREOF, SUPERVISORS LIVONIA PLAT #5, BEING A SUBDIVISION OF PART OF THE
SOUTH 1/2 OF THE NORTHWEST 1/4 OF SECTION 13, TOWN 1 SOUTH, RANGE 9 EAST, LIVONIA
TOWNSHIP, WAYNE COUNTY, MICHIGAN, AS RECORDED IN LIBER 66, PAGE 32 OF PLATS, WAYNE
COUNTY RECORDS.

GF430A3 (02 15 01/1-01) R30C

L1-43896   Pg-666

Form No. 3301 (6/00)
Short Form Commitment, EAGLE
SEARCH PLUS

ORDER NO: 3023871
FILE NO: 3023871
LENDER REF. 1066-840160

### Exhibit "A"

The land referred to in this policy is situated in the STATE OF MICHIGAN, COUNTY OF WAYNE, TOWNSHIP OF LIVONIA, and described as follows

THAT PART OF LOTS 330 AND 331, LYING NORTH OF THE CENTER LINE OF BELL CREEK, EXCEPT THE EAST 42 FEET THEREOF, SUPERVISORS LIVONIA PLAT #5, BEING A SUBDIVISION OF PART OF THE SOUTH 1/2 OF THE NORTHWEST 1/4 OF SECTION 13, TOWN 1 SOUTH, RANGE 9 EAST, LIVONIA TOWNSHIP, WAYNE COUNTY, MICHIGAN, AS RECORDED IN LIBER 66, PAGE 32 OF PLATS, WAYNE COUNTY RECORDS.

Prepped

FEB 2 3 2006

Sharon Ruiz

PAGE 5

# EXHIBIT B

NON-NEGOTIABLE ASSIGNABLE

Third Party Certificate

(7006 0100 0003 2251 4218)
7006-2150-0001-4886-6194

JOHN TATAR
C/O 16451 SAVOIE
LIVONIA, MI 48154-3319

FEBRUARY 26, 2008
WACHOVIA MORTGAGE FKS
WORLD SAVINGS
4101 WISEMAN BOULEVARD
SAN ANTONIO, TX. 78251-4201

Subject:      Written Request for Validation of Debt

Reference:    Account # 29588712

Sir(s),

It is hereby requested in writing that you provide validation of this alleged debt within the time set certain of 30 days from this date until MARCH 30, 2008. The validation of debt is to be as follows:

1) Name and address of the h older in due course of the alleged Debt.
2) The signed Contract and all of its amendments, addendums, between the parties.
3) The wet ink signature for each item listed on the account statements.
4) Validation is to be attested, under penalty, by a wet ink signature of Promissory Note.
5) Provide unaltered Original Promissory Note in which is one of the requirements to be deemed a holder in due course and to do a foreclosure based on a note in question.

Failure to provide the validation in this format within the time set certain as provided above will constitute a Breach of Contract with a penalty set certain of two hundred and forty thousand sixty five dollars seventy one cents ($240,065.71) U.S. Dollars or its equivalent.

**Terms for Injury are hereby stated and set certain:**
For Commercial Injuries incurred by the actions of Wachovia Mortgage FKA World Savings Bank . The amount set certain is two hundred and forty thousand sixty five and seventy one cents ($240,065.71) U.S. Dollars or their equivalent. If this amount is not paid during the time allowed by the invoice, penalty of two hundred and forty thousand and sixty five dollars  seventy one cents ($240,065.71) U.S. Dollars or their equivalent will be added. In addition, both the amount set certain for the injury and the penalty amount, will bear and begin to accrue interest at ten (10) percent per annum, also an initial minimum collection fee of one hundred and twenty thousand three hundred and twenty eighty dollars fifty five cents ($120,328.55) U.S. Dollars or their equivalent plus any additional collection expenses will accrue to your debt and paid by WACHOVIA MORTGAGE FKS WORLD SAVINGS BANK . A Lien may be placed against you in the Commercial Register among other lawful remedies, which are collectable and will be paid out of Bank account funds.

Notice to Agent is Notice to Principal; Notice to Principal is Notice to Agent.

Presented

BY _____
      JOHN TATAR, agent

This is a non-negotiable Legal Instrument under the Uniform Commercial Code (UCC)

# EXHIBIT C

JOHN TATAR                                    **THIRD PARTY MAILING**
C/O 16451 SAVOIE                              **(7007 3020 000 2792 5086)**
LIVONIA, MI 48154-3319

APRIL 4, 2008

WORLD SAVINGS BANK FSB
P.O. BOX 659548
SAN ANTONIO, TX. 7865-9548

Subject:   Breach of Contract and Extension of Time

Reference:   Account Number #29588712

Sir; (s)
On February 26, 2008, JOHN TATAR, requested validation of the alleged debt you are trying to collect. WORLD SAVINGS BANK FSB has failed to provide the validation as requested in the allotted time allowed. WORLD SAVINGS BANK FSB, has now caused JOHN TATAR a commercial injury in the amount set certain of $240,065.71 U.S. Dollars or their equivalence.

I now extend an additional 10 days, (APRIL 17, 2008) to provide the requested validation. You may send the validation to the above address.

If you fail again, I will again hold WORLD SAVINGS BANK FSB in Breach of the Contract, which will again cause JOHN TATAR an additional Commercial Injury with a penalty of an amount set certain of $240,065.71 U.S. Dollars. All collection cost to be paid by you and if necessary a Lien may be entered against you upon your full Commercial Liability.

**Terms for Injury Compensation are hereby stated and set certain:**
For Commercial Injures incurred, by the actions of WORLD SAVINGS BANK FSB in the amount set certain is two hundred and forty thousand sixty five and .71 ($240,065.71) U. S. Dollars or their equivalent. If this amount is not paid during the time allowed by the invoice, a penalty of one hundred and twenty thousand thirty two and .85($120,032.85) U.S. Dollars or their equivalent will be added. In addition both the amount set certain for the injury and the penalty amount, will bear and begin to accrue interest at ten (10) percent per annum, also an initial minimum collection fee of sixty thousand sixteen and .42 ($60,016.42) U.S. Dollars or their equivalent plus any additional cost will accrue to y our debt and paid by WORLD SAVINGS BANK FSB. A Lien my be placed against you in the Commercial Register among other lawful remedies, which are collectable and will be paid out of Bank account funds.

Notice to Agent is Notice to Principal; Notice to Principal is Notice to Agent.

Presented,

By _____

JOHN TATAR, agent

<u>**INVOICE # JT040408101**</u>

JOHN TATAR
C/O 16451 SAVOIE
LIVONIA, MI 48054-3319

APRIL 4, 2008

WORLD SAVINGS BANK FSB
P. O. BOX 659548
SAN ANTONIO, TX. 7865-9548

On FEBRUARY 26, 2008, JOHN TATAR, requested validation of the alleged debt you are trying to collect. WORLD SAVINGS BANK FSB, has failed to provide the validation as request in the allotted time allowed. WORLD SAVINGS BANK FSB has now caused JOHN TATAR a commercial injury in the amount set certain of $240,065.71 U.S. Dollars or their equivalence. WORLD SAVINGS BANK FSB is hereby billed for the penalty set certain:

| | |
|---|---|
| Commercial Injury | $240,065.71 U.S. DOLLARS |
| Total now due | $240,065.71 U.S. DOLLARS |

You have 10 days to pay (by APRIL 18, 2008) by sending funds to;

JOHN TATAR
C/O 16541 SAVOIE
LIVONIA, MICHIGAN 48154-3319

If you fail to pay this amount within the 10 days you will additionally be charged a penalty of $120,032.85 U.S. Dollars and for all collection costs, with a initial minimum of $60,016.42 U.S. Dollars and a Lien against you in the commercial registry.

Notice to Agent is Notice to Principal; Notice to Principal is Notice to Agent.

Presented

By _____
    JOHN TATAR, agent

### Truth Affidavit
### IN SUPPORT OF INVOICE # JT040408101
### PLAIN STATEMENT OF FACTS

A matter must be expressed for being resolved. In commerce, truth is sovereign. Truth in the form for an Affidavit. An Affidavit not rebutted stands as Truth in commerce. An Affidavit not rebutted within thirty-days (30) becomes the judgment in commerce. A Truth Affidavit under commercial law can only be satisfied by, a Truth Affidavit rebuttal, by payment, or by resolution.

### EQUITY UNDER THE LAW IS PARAMOUNT AND MANDITORY BY LAW

The undersigned, hereafter Affiant, a natural man, a living breathing soul,  a sovereign in correct capacity as beneficiary to the Original Jurisdiction, being of majority in age, having a sound mind, competent to testify, a self-realized entity, a free man upon the land, my yes be yes, my no be no, do state that the truths and facts herein are of firsthand knowledge, true, correct, complete, certain, and not misleading, so help me God.

1. Affiant is of majority in age, has a sound mind and is competent to testify.
2. Affiant states that the truth and facts herein are of first hand personal knowledge.
3. Affiant state the on (February 26, 2008) JOHN TATAR, requested validation of the alleged debt.
4. Affiant states that on MARCH 30, 2008 at the end of the ten days to pay, WORLD SAVINGS BANK FSB has failed to provide the validation of the alleged debt.
5. Affiant states that WORLD SAVINGS BANK FSB owes the penalty for their failure in the amount set certain of $240,065.71 U.S. Dollars.
6. Affiant states that WORLD SAVINGS BANK FSB owes JOHN TATAR the amount set certain of $240,065.71 U. S. Dollars.

Further, Affiant saith not

DATED: the 7 day of APRIL, 2008

JOHN TATAR, agent

Using a notary on this document does not constitute any adhesion nor does it alter my Neutral standing in intinere in original Common Law Jurisdiction. The purpose for notary is validation and identification only and not for entrance into any foreign jurisdiction.

### JURAT

STATE OF NORARY'S STATE
COUNTY OF NOTARY'S COUNTY                                            {Seal}

SUBSCRIBED AND SWORN TO (or Affirmed)
BEFORE ME ON THIS   7   DAY OF APRIL 2008

BY E J Dalpe
A sovereign man personally known to me or proved to me on the basis
Of satisfactory evidence to be the person(s) who appeared before me

                                                                    {Stamp}

E. J. DALPE
Notary Public, State of Michigan
County of Wayne
My Commission Expires Jul. 10, 2014
Acting in the County of WAYNE

NOTARY PUBLIC IN AND FOR AFORESAID STATE

# EXHIBIT D

2010 AUG 26 PM 3: 10

**FILE DO NOT MAIL**

Bernard J. Youngblood
Wayne County Register of Deeds
August 26, 2010 03:10 PM
Liber 48711 Page 324-333
#2010306161 SHD FEE. $42.00

305646F01 Tatar - FC J

## SHERIFF'S DEED ON MORTGAGE SALE

This Indenture Made this 18th day of August, A.D. 2010, between, _____ Ralph Leggat _____, a Deputy Sheriff in and for Wayne County, Michigan, whose address is 1231 Saint Antoine St Detroit, Michigan 48226-2300 , party of the first part, and Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB, whose address is 4101 Wiseman Blvd, San Antonio, TX 78251-4200 , party of the second part (hereinafter called the grantee).

WITNESSETH, That Whereas a certain mortgage made by John Tatar, married man, joined by his wife Zhanna Tatar AKA Zhanna Tarter, original mortgagor(s), to World Savings Bank, FSB, Mortgagee, dated June 13, 2005, and recorded on November 29, 2005 in Liber 43896 on Page 650, in Wayne county records, Michigan

WHEREAS, said mortgage contained a power of sale which has become operative by reason of a default in the condition of said mortgage, and

WHEREAS, no suit or proceedings at law or in equity have been instituted to recover the debt secured by said mortgage or any part thereof, and

WHEREAS, by virtue of said power of sale, and pursuant to the statute of the State of Michigan in such case made and provided, a notice was duly published and a copy thereof was duly posted in a conspicuous place upon the premises described in said mortgage, that the said premises, or some part of them, would be sold at 1:00 PM on the 24th day of March, A.D. 2010 (sale adjourned from March 24, 2010 to August 18, 2010), at public vendue, that being the place of holding the Circuit Court for Wayne County where the premises are situated and

WHEREAS, pursuant to said notice I did, at on the day last aforesaid, expose for sale at public vendue the said lands and tenements hereinafter described, and on such sale did strike off and sell the said lands and tenements to the grantee for the sum of One Hundred Twenty-Seven Thousand Nine Hundred Thirty-Five And 00/100 Dollars ($127,935.00), that being the highest bid therefore and the grantee being the highest bidder, and

WHEREAS, said lands and tenements are situated in the City of Livonia, Wayne County, Michigan, more particularly described in exhibit A, attached and commonly known as:
16451 Savoie St
Property Tax Parcel ID 46-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-003
This property may be located within the vicinity of farmland or a farm operation. Generally, accepted agricultural and management practices, which may generate noise, dust, odors, and other associated conditions, may be used and are protected by the Michigan right to farm act.

Now, this Indenture Witnesseth, That I, the Deputy Sheriff aforesaid, by virtue of and pursuant to the statute in such case made and provided, and in consideration of the sum of money so paid as aforesaid, have granted, conveyed, bargained and sold, and by this deed do grant, convey, bargain and sell unto the grantee, its successors and assigns, forever, all the estate, right, title and interest, which the said Mortgagor(s) had in said land and tenements and every part thereof, on the 13th day of June, A.D. 2005, that being the date of said mortgage, or at any time thereafter, to have and to hold the said lands and tenements and every part thereof to the said grantee, its successors and assigns forever, to their sole and only use, benefit and behoof forever, as fully and absolutely as I, the Deputy Sheriff aforesaid, under the authority aforesaid, might, could or ought to sell the same.

IN WITNESS WHEREOF, I have hereunto set my hand and seal, the date and year first above written

**Ralph Leggat** _(signature)_

Deputy Sheriff in and for the County of Wayne

STATE OF MICHIGAN
COUNTY OF WAYNE

On this 18th day of August, A.D. 2010, before me, a Notary Public in and for said County of Wayne came _____ Ralph Leggat _____, a Deputy Sheriff of said County, known to me to be the individual described in and who executed the above conveyance, and who acknowledged that he executed the same to be his free act and deed as such Deputy Sheriff.

_(signature)_

Notary Public, Wayne County, Michigan
My commission expires:
Acting in the county of Wayne

Adrienne Sanders
Notary Public State of Michigan
County of Wayne
My Commission Expires Oct. 9, 2013

THIS INSTRUMENT IS EXEMPT FROM MICHIGAN TRANSFER TAX UNDER MCL 207.526(v).

M STATE OF
MICHIGAN    REAL ESTATE
TRANSFER TAX

**pdfMachine**
**A pdf writer that produces quality PDF files with ease!**
Produce quality PDF files in seconds and preserve the integrity of your original documents. Compatible across nearly all Windows platforms, simply open the document you want to convert, click "print", select the "Broadgun pdfMachine printer" and that's it! Get yours now!

L 48711 - P 325

305646F01 Tatar - FC J

**Exhibit A - Property Description**

That part of Lots 330 and 331, lying North of the Center line of Bell Creek, except the East 42 feet thereof, Supervisors Livonia Plat #5, being a subdivision of part of the South 1/2 of the Northwest 1/4 of Section 13, Town 1 South, Range 9 East, Livonia Township, Wayne County, Michigan, as recorded in Liber 66, Page 32 of Plats, Wayne County Records

**pdfMachine**
**A pdf writer that produces quality PDF files with ease!**
Produce quality PDF files in seconds and preserve the integrity of your original documents. Compatible across nearly all Windows platforms, simply open the document you want to convert, click "print", select the "Broadgun pdfMachine printer" and that's it! Get yours now!

L 48711 - P 326

**Team J - John Tatar**

NOTICE PURSUANT TO MCL 600.3205a(4)NOTICE is hereby provided to John Tatar and Zhamna Tatar, the borrowers and/or mortgagors (hereinafter "Borrower") regarding the property located at: 16451 Savoie St, Livonia, MI 48154-3319.The Borrower has the right to request a meeting with the mortgage holder or mortgage servicer. The agent designated by the Mortgage Servicer and/or Mortgage Holder to contact and that has authority to make agreements under MCL sections 600.3205b and 600.3205c is: Trott & Trott, P.C., 31440 Northwestern Highway, Suite 200, Farmington Hills, MI 48334-2525 at (248) 593-1311The Borrower may contact a housing counselor by visiting the Michigan State Housing Development Authority's website or by calling the Michigan State Housing Development Authority at http://www.michigan.gov/mshda or at (866) 946-7432.If the Borrower requests a meeting with the agent designated above by contacting an approved housing counselor within 14 days from January 22, 2010, foreclosure proceedings will not be commenced until 90 days after January 22, 2010.If the Borrower and the agent designated above reach an agreement to modify the mortgage loan, the mortgage will not be foreclosed if the Borrower abides by the terms of the agreement.The Borrower has the right to contact an attorney. The telephone number of the State Bar of Michigan's Lawyer Referral Service is (800) 968-0738.THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT.ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE.Date: January 25, 2010For more information, please call:FC J (248) 593-1311Trott & Trott, P.C.Attorneys For Servicer and/or Mortgage Holder31440 Northwestern Highway, Suite 200Farmington Hills, MI 48334-2525File # 305646F01(1-25)

### AFFIDAVIT OF PUBLICATION

(Affidavit of Publisher)

STATE OF MICHIGAN,
       ss.
COUNTY OF WAYNE

Pushpa Jayaprakash, an employee of the publisher of Detroit Legal News, having knowledge of the facts, being duly sworn deposes and says that a notice, a true copy of which is annexed hereto, was published in Detroit Legal News, a newspaper printed and circulated in said Wayne County on January 25, 2010 A.D.

Pushpa Jayaprakash

Subscribed and sworn before me on this 25th day of January 2010 A.D.

Margot Blanchette

Notary Public Oakland County, Michigan. My commission expires: July 2, 2010. Acting in Wayne County, Michigan.

| | |
|---|---|
| Attorney Office: | Trott & Trott P.C. (team j) Wayne     Team J |
| AttorneyFile#: | 305646F01 |
| Notice#: | 731781 |

**pdfMachine**
**A pdf writer that produces quality PDF files with ease!**
Produce quality PDF files in seconds and preserve the integrity of your original documents. Compatible across nearly all Windows platforms, simply open the document you want to convert, click "print", select the "Broadgun pdfMachine printer" and that's it! Get yours now!

L 48711 - P 327

**Team J - John Tatar**

TROTT & TROTT, P.C.Attorneys and Counselors31440 Northwestern Highway, Suite 200Farmington Hills, Michigan 48334-2525THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. PLEASE CONTACT OUR OFFICE AT THE NUMBER BELOW IF YOU ARE IN ACTIVE MILITARY DUTY ATTN PURCHASERS: This sale may be rescinded by the foreclosing mortgagee. In that event, your damages, if any, shall be limited solely to the return of the bid amount tendered at sale, plus interest.MORTGAGE SALE - Default has been made in the conditions of a mortgage made by John Tatar, married man, joined by his wife Zhanna Tatar AKA Zhanna Tarter, original mortgagor(s), to World Savings Bank, FSB, Mortgagee, dated June 13, 2005, and recorded on November 29, 2005 in Liber 43896 on Page 650, in Wayne county records, Michigan, on which mortgage there is claimed to be due at the date hereof the sum of Two Hundred Fifty Thousand One Hundred Eighty-One And 14/100 Dollars ($250,181.14), including interest at 4.99% per annum.Under the power of sale contained in said mortgage and the statute in such case made and provided, notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public vendue, at the place of holding the circuit court within Wayne County, at 1:00 PM, on March 24, 2010.Said premises are situated in City of Livonia, Wayne County, Michigan, and are described as: That part of Lots 330 and 331, lying North of the Center line of Bell Creek, except the East 42 feet thereof, Supervisors Livonia Plat #5, being a subdivision of part of the South 1/2 of the Northwest 1/4 of Section 13, Town 1 South, Range 9 East, Livonia Township, Wayne County, Michigan, as recorded in Liber 66, Page 32 of Plats, Wayne County RecordsThe redemption period shall be 6 months from the date of such sale, unless determined abandoned in accordance with MCLA 600.3241a, in which case the redemption period shall be 30 days from the date of such sale.Dated: February 22, 2010For more information, please call: FC J (248) 593-1311Trott & Trott, P.C.Attorneys For Service31440 Northwestern Highway, Suite 200Farmington Hills, Michigan 48334-2525File #305646F01(2-22)(3-15)

**AFFIDAVIT OF PUBLICATION**

(Affidavit of Publisher)

STATE OF MICHIGAN,
      ss.
COUNTY OF WAYNE

Pushpa Jayaprakash, an employee of the publisher of Detroit Legal News, having knowledge of the facts, being duly sworn deposes and says that a notice, a true copy of which is annexed hereto, was published in Detroit Legal News, a newspaper printed and circulated in said Wayne County on February 22, March 1, March 8, March 15, 2010 A.D.

*Pushpa Jayaprakash*

Subscribed and sworn before me on this 15th day of March 2010 A.D.

*Margot Blanchette*

Margot Blanchette

Notary Public Oakland County, Michigan. My commission expires: July 2, 2010. Acting in Wayne County, Michigan.

| | |
|---|---|
| Attorney Office: | Trott & Trott P.C. (team j) Wayne     Team J |
| AttorneyFile#: | 305646F01 |
| Notice#: | 747151 |

**pdfMachine**
**A pdf writer that produces quality PDF files with ease!**
Produce quality PDF files in seconds and preserve the integrity of your original documents. Compatible across nearly all Windows platforms, simply open the document you want to convert, click "print", select the "Broadgun pdfMachine printer" and that's it! Get yours now!

L 48711 - P 328

**Team J - John Tatar**

TROTT & TROTT, P.C.Attorneys and Counselors31440 Northwestern Highway, Suite 200Farmington Hills, Michigan 48334-2525THIS FIRM IS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION WE OBTAIN WILL BE USED FOR THAT PURPOSE. PLEASE CONTACT OUR OFFICE AT THE NUMBER BELOW IF YOU ARE IN ACTIVE MILITARY DUTY.ATTN PURCHASERS: This sale may be rescinded by the foreclosing mortgagee. In that event, your damages, if any, shall be limited solely to the return of the bid amount tendered at sale, plus interest.MORTGAGE SALE - Default has been made in the conditions of a mortgage made by John Tatar, married man, joined by his wife Zhanna Tatar AKA Zhanna Tarier, original mortgagor(s), to World Savings Bank, FSB, Mortgagee, dated June 13, 2005, and recorded on November 29, 2005 in Liber 43896 on Page 650, in Wayne county records, Michigan, on which mortgage there is claimed to be due at the date hereof the sum of Two Hundred Fifty Thousand One Hundred Eighty-One And 14/100 Dollars ($250,181.14), including interest at 4.99% per annum.Under the power of sale contained in said mortgage and the statute in such case made and provided, notice is hereby given that said mortgage will be foreclosed by a sale of the mortgaged premises, or some part of them, at public vendue, at the place of holding the circuit court within Wayne County, at 1:00 PM, on March 24, 2010.Said premises are situated in City of Livonia, Wayne County, Michigan, and are described as: That part of Lots 330 and 331, lying North of the Center line of Bell Creek, except the East 42 feet thereof, Supervisors Livonia Plat #5, being a subdivision of part of the South 1/2 of the Northwest 1/4 of Section 13, Town 1 South, Range 9 East, Livonia Township, Wayne County, Michigan, as recorded in Liber 66, Page 32 of Plats, Wayne County RecordsThe redemption period shall be 6 months from the date of such sale, unless determined abandoned in accordance with MCLA 600.3241a, in which case the redemption period shall be 30 days from the date of such sale.Dated: February 22, 2010For more information, please call: FC J (248) 593-1311Trott & Trott, P.C.Attorneys For Service31440 Northwestern Highway, Suite 200Farmington Hills, Michigan 48334-2525File #305646F01(2-22)(3-15)

**EVIDENCE OF SALE**

(Affidavit of Posting)

STATE OF MICHIGAN
ss.
COUNTY OF WAYNE

Brian Klerkx  being duly sworn, deposes that on the 25th day of February, 2010 A.D,  he/she posted a notice, a true copy of which is annexed hereto, in a conspicuous place upon the premises described in said notice by attaching the same in a secure manner to  the front door.

*Brian Klerkx*

Brian Klerkx

Subscribed and sworn before me on this 26th day of February 2010 A.D.

Deborah L. Elick

Notary Public Wayne  County, Michigan.  My commission expires: November 19, 2013 .  Acting in Wayne County, Michigan.

CIRCLE IF          Vacant

Multi-Unit    Upper Unit    Lower Unit

Multi-Addr    Unit 1    Unit 2    Unit A    Unit B

Condo      Mobile/Manufactured Home      No Dwelling

Attorney Office:  Trott & Trott P.C. (team j) Wayne

Attorney File#  305646F01050607

Notice ID#  747151

**pdfMachine**
**A pdf writer that produces quality PDF files with ease!**
Produce quality PDF files in seconds and preserve the integrity of your original documents. Compatible across nearly all Windows platforms, simply open the document you want to convert, click "print", select the "Broadgun pdfMachine printer" and that's it! Get yours now!

L 48711 - P 329

Tatar, John                                    T&T #305646F01
NON-MILITARY AFFIDAVIT
STATE OF MICHIGAN
                                    SS.
COUNTY OF OAKLAND

The undersigned, being first duly sworn, deposes and says that upon investigation she/he is informed and believes that none of those persons named in the attached notice of mortgage foreclosure are currently in active military service of the United States.

Jennifer V. Sayegh

Signed and sworn to before me in Oakland County, Michigan, on this 16th day of August 2010 by
                                    Jennifer V. Sayegh

Eric M Gibson, Notary public
State of Michigan, County of Wayne
My commission expires March 19, 2012
Acting in the County of Oakland


EVIDENCE OF SALE (Affidavit of Auctioneer)
STATE OF MICHIGAN
                                    SS.
COUNTY OF WAYNE

                            Ralph Leggat

, being duly sworn, deposes and says that he is a Deputy Sheriff of said Wayne; that he acted as Auctioneer, and made the sale as described in the annexed Deed pursuant to the annexed printed notice: that said sale was opened at 1:00 PM on the 18th day of August, A.D. 2010, at the In Courtroom 1607, Wayne County Circuit Court Tower in the Coleman A. Young Municipal Center in Detroit, Michigan, that being the place of holding the Circuit Court in said Wayne County; that the highest bid for the lands and tenements therein described was One Hundred Twenty-Seven Thousand Nine Hundred Thirty-Five And 00/100 Dollars dollars $127,935.00 made by Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB; that said sale was in all respects open and fair; and that he did strike off and sell lands and tenements to said bidders, which purchased the said lands and tenements fairly, and in good faith, as deponent verily believes.

Ralph Leggat                        Ralph Leggat

Deputy Sheriff in and for Wayne County, Michigan

Signed and sworn to before me in Wayne County, Michigan, on this 18th day of August, A.D. 2010

Adrienne Sanders
Notary Public, Wayne County, Michigan      Notary Public State of Michigan
My Commission Expires:                          County of Wayne
Acting in the county of Wayne              My Commission Expires Oct. 9, 2013

I DO HEREBY CERTIFY that the last day to redeem is February 18, 2011, after which the within Sheriff's Deed will become operative, unless determined abandoned in accordance with MCLA 600.3241a, or unless redeemed according to the law, in such case made and provided.

Ralph Leggat                        Ralph Leggat

Deputy Sheriff in and for Wayne County, Michigan


Prepared By:
Terese McDermott (P71090)
Trott & Trott, P.C.
31440 Northwestern Highway, Suite 200
Farmington Hills, MI 48334-2525
T & T # 305646F01

ATTN REGISTER OF DEEDS: Please send all Redemption notifications and funds collected in your office to Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB c/o Trott & Trott, P.C., Post-Sale Unit, 31440 Northwestern Highway, Suite 200, Farmington Hills, MI 48334-2525.

ATTN PURCHASERS: This sale may be rescinded by the foreclosing mortgagee. In that event, your damages, if any, shall be limited solely to the return of the bid amount tendered at sale, plus interest. Please be advised that all 3rd party bidders are responsible for preparing and recording the Sheriff's Deed. TROTT & TROTT, P.C. Hereby expressly disclaims all liability relating to the foreclosure, preparation and recording of the Sheriff Deed.

pdfMachine
A pdf writer that produces quality PDF files with ease!
Produce quality PDF files in seconds and preserve the integrity of your original documents. Compatible across nearly all Windows platforms, simply open the document you want to convert, click "print", select the "Broadgun pdfMachine printer" and that's it! Get yours now!

L 48711 - P 330

## AFFIDAVIT OF MCL 600.3205 NOTICE

STATE OF MICHIGAN)
COUNTY OF OAKLAND) SS.

NOW COMES _____ Jennifer V. Sayegh _____, who, first being sworn, deposes and says:

That he/she is an attorney for Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB, and is duly authorized to execute this Affidavit on its behalf.

That he/she served written notice dated January 22, 2010 in the manner necessary according to MCL 600.3205a(3);

That said notice includes: (a) the reason for default and the amount due and owing; (b) the contact information for the mortgage holder, the mortgage servicer, or any agent designated by the mortgage holder or mortgage servicer; and (c) a statement of the borrowers' rights, all according to MCL 600.3205a(1);

That said notice includes a list of housing counselors as required by MCL 600.3205a(2); and

That the time for a housing counselor to notify the person designated under MCL 600.3205a(1)(c) of a request by the borrower(s) has expired without a request for a meeting.

FURTHER DEPONENT SAYETH NOT.

_____
Jennifer V. Sayegh
Attorney for Wells Fargo Bank, N.A. successor by merger to
Wells Fargo Bank Southwest, N.A. formerly known as Wachovia
Mortgage, FSB f/k/a World Savings Bank, FSB
Trott & Trott, P.C.
31440 Northwestern Highway, Suite 200
Farmington Hills, MI 48334-2525

Signed and sworn to before me in Oakland County, Michigan, on 1/16/10

by _____, Attorney for Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB

_____
Eric M Gibson, Notary/public
State of Michigan, County of Wayne
My commission expires March 19, 2012
Acting in the County of Oakland

T&T # 305646F01 Tatar, John

**pdfMachine**
**A pdf writer that produces quality PDF files with ease!**
Produce quality PDF files in seconds and preserve the integrity of your original documents. Compatible across nearly all Windows platforms, simply open the document you want to convert, click "print", select the "Broadgun pdfMachine printer" and that's it! Get yours now!

L 48741 - P 331

## NOTICE OF MORTGAGE FORECLOSURE SALE

TO:    Internal Revenue Service
       Technical Services Advisory 10th Floor
       985 Michigan Ave.
       Detroit, Michigan 48226
       ATTN: STOP 47 SPS

FROM: Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage,
      FSB f/k/a World Savings Bank, FSB
      4101 Wiseman Blvd San Antonio, TX 78251-4200

RE:    Notice of Federal Tax Lien(s) recorded in Wayne County

| Amount | Recorded | Liber | Page | Instrument |
|--------|----------|-------|------|------------|
| $26845.39 | 12/5/2007 | 46847 | 1143 | |
| $141793.11 | 12/5/2007 | 46847 | 1144 | |
| $87504.48 | 11/18/2005 | 43853 | 363 | |

1.  The name and address of the taxpayer are shown on the attached notice of federal tax lien.

2.  Street address of the property to be sold:
    16451 Savoie St
    Livonia, MI 48154-3319

3.  The Legal Description of the property is shown on the attached title commitment.

4.  The sheriff's sale is scheduled for 8/18/2010 at 1:00 PM .

    Place Of Sale: In Courtroom 1607, Wayne County Circuit Court Tower in the Coleman A. Young Municipal Center in Detroit

5.  The approximate amount required to redeem the property after the sheriff sale is $255831.88 plus interest from 8/18/2010 to date
    of redemption at 4.9900% per annum plus any advances that may be made for taxes, insurance and property preservation. The
    redemption period shall be 6 months from the date of such sale, unless determined abandoned in accordance with MCLA
    600.3241a, in which case the redemption period shall be 30 days from the date of such sale.

                                        Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank
                                        Southwest, N.A. formerly known as Wachovia Mortgage, FSB
                                        f/k/a World Savings Bank, FSB

Dated: 2/19/2010                        By:
                                        Terese McDermott (P71090)
                                        Attorney For Wells Fargo Bank, N.A. successor by merger to
                                        Wells Fargo Bank Southwest, N.A. formerly known as Wachovia
                                        Mortgage, FSB f/k/a World Savings Bank, FSB
                                        Trott & Trott, P.C.
                                        31440 Northwestern Highway, Suite 200
                                        Farmington Hills, MI 48334-2525

T&T #305646F01

**pdfMachine**
**A pdf writer that produces quality PDF files with ease!**
Produce quality PDF files in seconds and preserve the integrity of your original documents. Compatible across
nearly all Windows platforms, simply open the document you want to convert, click "print", select the
"Broadgun pdfMachine printer" and that's it! Get yours now!

L 48711 - P 332

### AFFIDAVIT IN SUPPORT OF
### NOTICE OF MORTGAGE FORECLOSURE SALE

STATE OF MICHIGAN)
COUNTY OF OAKLAND) SS.

NOW COMES Terese McDermott (P71090), who, first being sworn, deposes and says:

That he/she is an attorney for Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB and is duly authorized to execute this Affidavit on its behalf.

That proper notice of foreclosure sale was given to the United States of America not less than twenty-five (25) days before the foreclosure sale. A true copy of the original Notice is attached hereto.

That he/she served a copy of the original Notice of Foreclosure Sale upon the District Director, Internal Revenue Service at Internal Revenue Service, Technical Services Advisory 10th Floor, 985 Michigan Ave., Detroit, Michigan 48226 ATTN: Stop 47 SPS by certified mail on 2/22/2010 at 10:41 AM as verified by the United States Postal Service via certified mail tracking number 7007 2560 0003 2152 4189.

That no notice of inadequacy has been received from the aforementioned District Director, Internal Revenue Service.

FURTHER DEPONENT SAYETH NOT.

Terese McDermott (P71090)
Attorney For Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB
Trott & Trott, P.C.
31440 Northwestern Highway, Suite 200
Farmington Hills, MI 48334-2525

Signed and sworn to before me in Oakland County, Michigan, on August 12, 2010 by Terese McDermott, Attorney for Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB.

Eric M Gibson, Notary public
State of Michigan, County of Wayne
My commission expires March 19, 2012
Acting in the County of Oakland

T&T #305646F01

**pdfMachine**
**A pdf writer that produces quality PDF files with ease!**
Produce quality PDF files in seconds and preserve the integrity of your original documents. Compatible across nearly all Windows platforms, simply open the document you want to convert, click "print", select the "Broadgun pdfMachine printer" and that's it! Get yours now!

L 487.11 - P 333

## AFFIDAVIT OF PURCHASER

The Undersigned, being duly sworn, states as follows:

1. I am an employee of Trott & Trott, P.C. and am authorized as counsel to submit this Affidavit Of Purchaser. I have knowledge of the facts stated herein and am competent to testify concerning such facts regarding a foreclosure sale scheduled for August 18, 2010 with respect to certain real property (the "Property") commonly known as 16451 Savoie St.

2. This affidavit may only be recorded and used by Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB in the event it is the successful purchaser of the property on August 18, 2010. No other purchaser may utilize this affidavit.

3. The last date the Property may be redeemed is February 18, 2011. ANY REDEEMING PARTY SHOULD NOTE THAT THIS DATE MAY CHANGE AS SET FORTH IN SUBSEQUENT AFFIDAVITS OR AS PROVIDED BY APPLICABLE LAW.

4. The amount necessary to redeem the Property is $127,935.00 (One Hundred Twenty-Seven Thousand Nine Hundred Thirty-Five And 00/100 Dollars), plus interest at a per diem rate of $17.49 (Seventeen And 49/100 Dollars) from the date of sale to the date of redemption, plus any additional amounts that may be added pursuant to MCLA §600.3240(4). ANY REDEEMING PARTY SHOULD NOTE THAT THIS AMOUNT MAY INCREASE to include amounts paid by Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB for taxes, amounts necessary to redeem senior liens, condominium assessments, homeowner association assessments, community association assessments, insurance premiums, or any other amounts as provided by MCLA §600.3240(4), as well as interest thereon at the interest rate specified in the mortgage from the date of payment to the date of redemption.

5. Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB has designated Trott & Trott, P.C. as its designee responsible to assist an appropriate person redeeming the Property in computing the exact amount required to redeem the Property and to receive redemption funds. If you choose to utilize this assistance, contact Trott & Trott, P.C. at RedemptionFigures@trottlaw.com or by phone at (248) 593-1308. Pursuant to statute, Trott & Trott, P.C. will charge a fee of $150.00 (One Hundred Fifty And 00/100 Dollars) if you opt to use this assistance.

FURTHER DEPONENT SAYETH NOT.

Jennifer V. Sayegh
Attorney For Wells Fargo Bank, N.A. successor by merger to
Wells Fargo Bank Southwest, N.A. formerly known as Wachovia
Mortgage, FSB f/k/a World Savings Bank, FSB
Trott & Trott, P.C.
31440 Northwestern Highway, Suite 200
Farmington Hills, MI 48334-2525

Signed and sworn to before me in Oakland County, Michigan, on 8/16/10 by Jennifer V. Sayegh , Attorney for Wells Fargo Bank, N.A. successor by merger to Wells Fargo Bank Southwest, N.A. formerly known as Wachovia Mortgage, FSB f/k/a World Savings Bank, FSB.

Eric M Gibson, Notary public
State of Michigan, County of Wayne
My commission expires March 19, 2012
Acting in the County of Oakland

T&T #305646F01    John Tatar, Mortgagor(s).

**pdfMachine**
**A pdf writer that produces quality PDF files with ease!**
Produce quality PDF files in seconds and preserve the integrity of your original documents. Compatible across nearly all Windows platforms, simply open the document you want to convert, click "print", select the "Broadgun pdfMachine printer" and that's it! Get yours now!

# EXHIBIT E

**STATE OF MICHIGAN**
**JUDICIAL DISTRICT**
16th DC Livonia

Su~~~~~~ct
Landlord-Te~~~~~~

**CASE NO.**
11- 1049 LT

Court telephone no.
734.466.2500 x3541

Court address
32765 5 Mile Rd, Livonia, MI 48154-3045

Plaintiff's name, address, and telephone no.

Wells Fargo Bank, FSB

Plaintiff's attorney, bar no., address and telephone no.

Donald J King P55358
Trott & Trott, P.C.
31440 Northwestern Highway, Suite 200
Farmington Hills, MI 48334-2525
248.723.6452

v

Defendant's name, address, and telephone no.

John Tatar, Zhamna Tatar AKA Zhanna Tarter, Mr
Occupant, Mrs Occupant
16451 Savoie St
Livonia, MI 48154-3319
T&T #305646E02

Property situated in City of Livonia

If you require special accommodations to use the court
because of a disability or if you require a foreign language
interpreter to help you fully participate in courtproceedings
please contact the court immediately to make arrangements

☐ Rental unit eviction

☐ Land contract forfeiture

**NOTICE TO THE DEFENDANT:** In the name of the people of the State of Michigan you are notified:

1. The plaintiff has filed a complaint against you and wants

☐ to recover possession, after land contract forfeiture, of
☐ a money judgment for
☒ to evict you from

Address or description of premises
16451 Savoie St
Livonia, MI 48154-3319

2. You are summoned to be in the district court on _____5.3.11_____ at _____130pm_____
   Day and date                                              Time

☑ at the address above, ☐ _____ courtroom _____
                                    Location

3. You have the right to a jury trial. If you do not demand a jury trial and pay the required jury fee in your first defense response,
   you will lose this right.
4. If you are in district court on time, you will have an opportunity to give the reasons why you feel you should not be evicted.
   Bring witnesses, receipts, and other necessary papers with you.
5. If you are not in district court on time, you may be evicted without a trial and a money judgment may be entered against you.

DENNIS E. EPLER

_____4.18.11_____
Date issued

Court clerk

This document must be sealed by the seal of the court.

## HOW TO GET LEGAL HELP

1. You have the right to an attorney to assist you in answering the complaint filed in this case and in preparing defenses.

2. If you do not have an attorney but have money to retain one, you may locate an attorney through the State Bar of Michigan
   Lawyer Referral Service at 1-800-968-0738 or through a local lawyer referral service. Lawyer referral services should be listed
   in the yellow pages of your telephone directory or you can find a local lawyer referral service at www.michbar.org.

3. If you do not have an attorney and cannot pay for legal help, you may qualify for assistance through a local legal aid office.  Legal
   aid offices should be listed in the yellow pages of your telephone directory or you can find a local legal aid office at
   www.michiganlegalaid.org. If you do not have Internet access at home, you can access the Internet at your local library.

4. If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter
   to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

MCL 600.5735,
MCR 2.102, MCR 4.201(C), MCR 4.202(E)

DC 104 (3/08)   **SUMMONS, LANDLORD-TENANT / LAND CONTRACT**   *Tenant*

| STATE OF MICHIGAN JUDICIAL DISTRICT 16th DC Livonia | COMPLAINT TERMINATION OF TENANCY Landlord - Tenant | CASE NO. 11- 1044 SC |
|---|---|---|

**Court address**
32765 5 Mile Rd, Livonia, MI 48154-3045

**Court telephone no.**
734.466.2500 x3541

| | | |
|---|---|---|
| **Plaintiff name(s), address(es), and telephone no.(s)**<br>Wells Fargo Bank, FSB | v | **Defendant name(s) and address(es)**<br>John Tatar, Zhamna Tatar AKA Zhanna Tarter, Mr<br>Occupant, Mrs Occupant<br>16451 Savoie St<br>Livonia, MI 48154-3319<br>T&T #305646E02<br><br>Property situated in City of Livonia |
| **Plaintiff's attorney, bar no., address, and telephone no.**<br>Trott & Trott, P.C.<br>Donald J. King P55358<br>31440 Northwestern Highway, Suite 200<br>Farmington Hills, MI 48334-2525<br>248.723.6452 | | |

**The plaintiff states:**

1. Attached to this complaint is a copy of the lease or occupancy agreement, if any, under which possession is claimed, and a copy of the notice to quit or demand for possession showing when and how it was served.

2. The owner of the property described in the attached Sheriff's Deed, recorded on August 26, 2010 in Liber 48711 on Page 324-333 in instrument 2010306161 in Wayne County Records is the Plaintiff as referenced above.

3. The defendant is in possession of the following portion of the property:   all of the above captioned property

4. The plaintiff has terminated tenancy and has a right to possession of the property because:

  ☐ a. lease expired on _____.   ☐ b. tenancy terminated by notice to quit

  ☐ c. lease terminated per provision in lease (para no. _____).   ☐ d. defendant is a trespasser. see instructions on other side

  ☐ e. forcible entry made or possession held by force after peaceful entry.

  ☒ f. other: Defendants are wrongfully holding over after the expiration of the redemption period following a mortgage foreclosure sale. Upon information and belief, property is not occupied by a "bona fide tenant" as defined by Protecting Tenants at Foreclosure Act P.L. 111-22(702).

☐ 5. (If applicable)   The tenancy involves regulated housing operated by or under rules of a governmental unit. The rule or law under which the tenancy is ended is _____

☐ 6. (If applicable) Plaintiff declares that this residential property was kept fit for the use intended and has been kept in reasonable repair during the term of the lease.

  7. The defendant has not complied with the demands made and has not moved.

  8. Plaintiff asks for a judgment of possession and costs and asks the court to issue an order to evict the occupants.

☐ 9. The plaintiff demands a jury trial.

☒ 10. There is no other pending or resolved civil action arising out of the same transaction or occurrence alleged in this complaint

☐ 11. A civil action between these parties or other parties arising out of the transaction or occurrence alleged in this complaint has been previously filed in _____ Court. The docket number and assigned judge are: _____
The action ☐ remains ☐ is no longer pending.

## SUPPLEMENTAL COMPLAINT

☐ 12. (If applicable)  Complaint is made and judgment is sought for money damages against the defendant as follows:

**Date** 4-14-11

**Plaintiff/Attorney signature**  Donald J. King P55358

DC 102c (3/09)   **COMPLAINT, TERMINATION OF TENANCY, Landlord - Tenant**   *TENANT*

MCR 2.113(C), MCR 4.201(B)

# EXHIBIT F



June 10, 2011

# AFFIDAVIT

**WACHOVIA BANK hereinafter  Third Party Collector FOR World Saving
hereinafter "ALLEGED LENDER" Loan No: 0029588712
Regarding: John Tatar
Property Address: 16451 Savoie  Livonia, Michigan 48158**

### NOTICE TO PRINCIPAL IS NOTICE TO AGENT AND NOTICE TO AGENT IS NOTICE PRINCIPAL

I, John Tatar, herein "Affiant," having been duly sworn, declares that the following is true and to the best of my knowledge:

Be it known to all interested parties that no response has been submitted by Any officer of  WORLD SAVINGS/WACHOVIA BANK  in answer or rebuttal of   John Joseph Tatar.

1. Affidavit of Truth of John Joseph Tatar ____ dated: April 4, 2011 Regarding, Loan Number:0029588712. Certified Mail No:7010 2780 0000 3993 6164 all made pursuant to the "FAIR DEBT COLLECTION PRACTICES ACT" **no** response to have been received.

2. Certified Mail No: 7011 0470 0002 2375 6012 Notice of Fault dated: April 29, 2011

3. Certified Mail No:7010 2780 0000 3993 6294 Default issue date May 17,  2011.

AFFIDAVIT  PG 1 of 2    June 11, 2011

PREAMBLE TO THE AFFIDAVIT
**There is a dispute regarding who loaned what to whom to fund the "alleged loan."**

The alleged lender claims that they have loan papers with the affiants name on it as evidence of a debt. The bookkeeping entries show the opposite; that the affiant was the lender and the "alleged lender" was the borrower. This is one of the reasons the "Alleged lender maintains two separate sets of books; one to show record of loan the other to record payments as deposits. Since there was no loan 90 days after foreclosure the bank claims these as abandoned funds!

**According to GAAP,(Generally Accepted Accounting Principals) this is what happened:** The "alleged lender never lent one cent to the affiant as adequate consideration to purchase the affiant's promissory note. The affiant first became the lender to the "alleged lender" and the alleged lender was the borrower. The bank recorded the promissory note as an asset offset by a liability. The Promissory note was recorded as an asset in exchange for credits in the affiants transaction account or to give value to a check or other instrument. The matching principal in GAAP requires that there be a matching liability offsetting the promissory note recorded as an asset and that the liability shows that the alleged lender owes the alleged borrower money for the promissory note that was taken by the "alleged lender." When the "alleged lender" deposited the promissory note and credited the affiant's transaction account, the "alleged lender," recorded a loan from the affiant to the "alleged lender, making the affiant the lender and the "alleged lender the borrower."

This "Affidavit" is made pursuant to **"The Fair Debt Collections Practices Act"**, as codified at **15 USC §. 1692,** which stipulates that a debt collector must, if requested, provide a verification of the alleged debt. i.e. validate the debt. Per "The Fair Debt Collection Practices Act; "FDCPA*" the debt collector(Foreclosing Attorney) is mandated to cease all collection activity until verification is provided. Verification and Validation is defined as: confirmation of the correctness, truth, or authenticity, by affidavit, oath, or deposition. ( The Mortgage Note and/or Promissory note do not meet the FEDERALLY MANDATED REQUIREMENT FOR VALIDATION.)*

***Equality under the Law is Paramount and Manditory***

Pursuant to "The Fair Debt Collections Practices Act", the following proofs of claim are requested.

2.

1.) **Proof of claim**: That the intent of the agreement that the original party who funded the alleged loan per the bookkeeping entries is to be repaid the money?

2.) **Proof of claim**: That the Bank involved in the alleged loan follow GAAP, Generally Accepted Accounting Principles?

3.) **Proof of claim**: That the Bank involved in the alleged loan purchase the promissory note from the alleged borrower?

4.)    **Proof of claim**: That the alleged borrower did not provide any money, money equivalent, credit, funds or capital or thing of value that the bank used the give value to a check or similar instrument?

5.) **Proof of claim**: That the borrower to repay the "alleged loan" with the same species of money the bank used to fund the loan per GAAP, thus ending all interest and liens?

6.) **Proof of claim**: That the written agreement gives full disclosure of all material facts?

7.) **Proof of claim**: That the original lender used their own money to purchase the borrower's promissory note and not just accept the borrower's promissory note as money or like money to fund the check or similar instrument that the Lender then lent to the Borrower: which would have a economic effect similar to stealing, counterfeiting, and swindling? Did the Lender follow the Federal Laws 12 USC Sec. 1831n(a)(2)(A) and/or 12 CFR 741.6(b) regarding **Generally Accepted Accounting Principals and Generally Accepted Auditing Standards** concerning this loan?

8.) **Proof of claim**: That the "ALLEGED LENDER" used no Counterfeit Securities to initiate any action against the "Alleged Borrower" or advance any actions, collections, or claims against the "Alleged Borrower" verifiably the "Lender in Fact?"

9.) **Proof of claim**: That "ALLEGED LENDER " had the authority to lend it's credit according to it's charter.

10.) **Proof of claim**: That the Title Page does not show the mortgage has already been satisfied.

11.) **Proof of claim**: That "ALLEGED LENDER " operated in GOOD FAITH in this transaction?

12.) **Proof of claim**: That "ALLEGED LENDER'S contract is not  VOID, ULTRA VERIS and gross "Beach Of Contract".

13.) **Proof of claim**: That 1099-INT Interest Income; show "Alleged Lender," to be the lawful creditor

14.) **Proof of claim**: That 1099-OID Original Issue Discount: show "Alleged Lender," is the lawful creditor.

15.) **Proof of claim**: That 1099 PATR - Taxable Distributions Received From Cooperatives: show "Alleged Lender," is the lawful creditor.

16.) **Proof of claim**: That 1096 Annual Summary and Transmittal of U.S. Information Returns; show "Alleged Lender," is the lawful creditor.

17.) **Proof of Claim**:  That the "Title Page" does not shows the mortgage has not already been satisfied.

18.) **Proof of claim**: That all HUD documents and commissioners are provided

3.

DEBT before the Clerk Of Court of the **UNITED STATES DISTRICT COURT,**

**EASTERN DISTRICT, SOUTHERN DIVISION** on this day of

**Fifth** the month of **May** in the year of our Lord 2011 A.D., and states that all parties of

interest **have** been served.

:John; Joseph;--Tatar;

3c USA

Cc to:   **OFFICE OF THE COMPTROLLER OF THE CURRENCY**
**COMMUNICATIONS DIVISION**
**MR. JOHN WALSH**
**WASHINGTON D.C. 20219**
**202-874-5000**
**CERTIFIED MAIL # 7011 0110 0001 9915 7012**


**OFFICE OF THE COMPTROLLER OF THE CURRENCY**
**1301 McKENNEY ST.**
**HOUSTON, TX  77010**
**800-613-6743**
**CERTIFIED MAIL# 7011 0110 0001 9915 7029**


**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT COURT**
**SOUTHERN DIVISION**
**HON. MARIANNE O. BATTANI**
**231 LAFAYETTE ST**
**DETROIT, MI  48226**
**CERTIFIED MAIL# 7011 0110 0001 9915 6978**


**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT COURT**
**SOUTHERN DIVISION**
**MAGISTRATE R. STEVEN WHALEN**
**231 LAFAYETTE ST**
**DETROIT, MI  48226**
**CERTIFIED MAIL# 7011 0110 0001 9915 6985**


**INTERNAL REVENUE SERVICE**
**TECH SUPPORT DIVISION**
**C/O TREASURY UCC CONTRACT TRUST**
**1500 PENNSYLVANIA**

1

WASHINGTON D.C. 20220

16th DISTRICT COURT
ADMINISTRATIVE JUDGE KATHLEEN J. MCCANN
15140 FARMINGTON ROAD
LIVONIA, MI  48154
CERTIFIED MAIL# 7011 0110 0001 9915 6992

16th DISTRICT COURT
ADMINISTRATIVE JUDGE SEAN P. KAVANAGH
15140 FARMINGTON ROAD
LIVONIA, MI  48154
CERTIFIED MAIL#7011 0110 0001 9915 7005

JOHN J. TATAR
By: John; Joseph; --Tatar, Grantor/S

Signature   lawful man                         3c   USA

The above named Grantor/Settlor, personally known to me, appeared before me a Notary, Sworn and under Oath

this ___01___ day of __JUNE___, 2011.

_____
Notary

My commission expires _April 1, 2016_



EDWIN VICTOR NASSAR
Notary Public, State of Michigan
County of Wayne
My Commission Expires Apr. 01, 2016
Acting in the County of _WAYNE_

1

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

County in which action arose _WAYNE_

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
JOHN J. TATAR

### DEFENDANTS
WACHOVIA BANK TROTT & TROTT AND WELLS FARGO BANK, N.A

**(b)** County of Residence of First Listed Plaintiff _WAYNE_
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

Case: 2:11-cv-13090
Judge: Cox, Sean F.
MJ: Michelson, Laurie J.
Filed: 07-18-2011 At 12:23 PM
CMP JOHN J. TATAR V WACHOVIA BANK, ET AL (LG)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
JOHN J. TATAR IN PRO PER
16451 SAVOIE
LIVONIA, MI 48154 034 968 4715

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒1 | ☐1 | Incorporated or Principal Place of Business In This State | ☐4 | ☒4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business In Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☒ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☒ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

2
2
0

## V. ORIGIN (Place an "X" in One Box Only)
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
U.S.C. 1635 TILA 1 USC 1961-1968 RESPA TRUTH IN LENDING
Brief description of cause:
REAL PROPERTY INTEREST, ILLEGAL FORECLOSURE

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ 150,000.00
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE MARIANNE O. BATTANI
DOCKET NUMBER 2:11-CV-11212

DATE _18 JULY 2011_
SIGNATURE OF ATTORNEY OF RECORD
_John Joseph Tatar_

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?                    ☒ Yes
                                                                                  ☐ No

If yes, give the following information:

Court: *U.S. DISTRICT COURT*

Case No.: *2:11-CV-11212*

Judge: *MARIANNE O. BATTANI*


2.          Other than stated above, are there any pending or previously           ☐ Yes
            discontinued or dismissed companion cases in this or any other         ☒ No
            court, including state court? (Companion cases are matters in which
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____


Notes :